**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mike MEKSIAN, Defendant–Appellant.**

**No. 98–50431.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 6, 1999 *

Decided April 8, 1999.

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

He was sentenced to fifteen months imprisonment and was ordered to pay $225,001 in restitution to the Small Business Administration ("SBA") and to Security National Partners.[1]

The criminal offense arose from Meksian's 1990 purchase of a gas station at a tax sale auction for $225,000. He made an initial down payment of $25,000 from his own funds and contacted a loan broker to obtain the remaining balance. The broker presented the loan to Mechanics National Bank ("Mechanics"), an SBA lender. The loan was to be secured by the property on which the gas station was located. The bank valued the property at $480,000, 80% of the fair market value, for purposes of treating the property as collateral for the loan.

Prior to receiving formal approval of the loan, in January 1991, Meksian submitted copies of his federal tax returns for 1987, 1988, and 1989 to the bank. The 1989 return understated Meksian's income and the other two returns overstated it. Meksian alleges that the purpose of furnishing these false returns was to obtain the lower interest rate offered through SBA loans.[2] As a condition of the loan, the SBA required the bank to obtain an environmental risk report indicating to the satisfaction of the bank and the SBA that the property was free from contamination of any hazardous substance. Mechanics obtained an "Environmental Assessment Report" prepared by DCI Services. The report was based solely on "a site reconnaissance survey of the property and through contact with appropriate regulatory agencies." ER at 15. The report disclosed twenty-three properties within a one-mile radius that had either been declared hazardous waste sites or had underground tanks that had been leaking. The survey did not attempt to analyze the soil, ground water, air, or other building materials. Notwithstanding the negative aspects of the survey, the SBA and the bank approved the loan.

Shortly after the loan was approved, Meksian was convicted for a drug offense.[3] He

William J. Genego, Law Offices of William J. Genego, Santa Monica, California, for the defendant-appellant.

Kimberly A. Dunne, Assistant United States Attorney, Public Corruption & Government Fraud Section, Los Angeles, California, for the plaintiff-appellee.

Before: LAY,** SCHROEDER and HALL, Circuit Judges.

LAY, Circuit Judge:

In April 1998, Manouk ("Mike") Meksian pled guilty to one count of making false statements to a federally insured financial institution in violation of 18 U.S.C. § 1014.

** Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. The FDIC sold Mechanics National Bank's part of the loan (20%) to Security National Partners.

2. The government contends that without Meksian's false statements of income he would never have qualified for the SBA loan in the first place.

3. His conviction was reversed in 5 F.3d 1306 (9th Cir.1993), *overruled by United States v. Keys,*

thereafter defaulted on his loan with the bank. The SBA sought to foreclose on the collateral and discovered the property was worthless by reason of contamination. Thus, the SBA incurred a loss in the full amount of the loan.

In April 1998, Meksian pled guilty to making a false statement to a federally insured financial institution in violation of 18 U.S.C. § 1014 and he was sentenced to fifteen months. The district court also ordered restitution to repay the SBA's loss of $225,001. This appeal relates solely to the propriety of the district court's restitution order.

Meksian urges that the SBA's loss did not directly result from and was not proximately caused by the false statements he made to the bank. He argues that if the property had not been contaminated, Mechanics and the SBA would not have incurred any loss. We agree.

▄▄▄ The legality of a restitution order is reviewed *de novo*. *United States v. Rutgard*, 116 F.3d 1270, 1294 (9th Cir.1997). Under the Victim and Witness Protection Act ("VWPA"), the court "may order ... that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A) (Supp.1998). Pursuant to 18 U.S.C. § 3663(a)(1)(B)(i)(I) of the VWPA, restitution is authorized for "the amount of the loss sustained by each victim as a result of the offense." Victim is currently defined as "a person directly and proximately harmed" by the offense conduct. 18 U.S.C. § 3663(a)(2) (Supp.1998).[4]

The government essentially argues that the terms "directly ... harmed" are equivalent to "but for" causation. We reject this argument as inconsistent with our prior case law. At first glance, this circuit seems to have laid down different tests for causation.

See *United States v. Cloud*, 872 F.2d 846, 856 n. 13 (9th Cir.1989) (comparing *United States v. Spinney*, 795 F.2d 1410, 1417 (9th Cir. 1986) (stating that "the government need not prove that the defendant was *directly* responsible for the loss") (citation omitted), with *United States v. Tyler*, 767 F.2d 1350, 1351–52 (9th Cir.1985) (stating that "restitution is proper only for losses *directly* resulting from the defendant's offense") (citation omitted)). The apparent conflict stems from three cases.

First, in *United States v. Tyler*, 767 F.2d 1350, 1351–52 (9th Cir.1985), this court rejected a strict "but for" test. In *Tyler*, the defendant was arrested for cutting down timber from a national forest. The government took possession of the timber that same day, but retained it for evidentiary purposes. By the time the government sold it, the value of the timber had dropped significantly. The district court ordered Tyler to pay restitution for the decreased value of the timber. This court reversed the restitution order and found that Tyler did not cause the loss. The court observed: "Any reduction in [the timber's] value stems from the government's decision to hold the timber during a period of declining prices, not from Tyler's criminal acts." *Tyler*, 767 F.2d at 1352. The court reasoned that "restitution is proper only for losses *directly* resulting from the defendant's offense." *Id.* at 1351.

In *United States v. Keith*, 754 F.2d 1388, 1393 (9th Cir.1985), the defendant pled guilty to assault with intent to commit rape and second degree burglary. This court approved an order of restitution for loss of wages after the victim quit her job. The defendant argued that the victim left her job not because of the assault, but because the defendant's mother threatened her. *Keith*,

133 F.3d 1282 (9th Cir.1998) en banc. Consequently, Meksian pled guilty to a reduced charge and received a sentence of forty-eight months.

4. In 1996, the statute was amended to reflect the above language. Under the pre-amendment version of the Act, the language only included those persons "directly harmed" by the offense conduct. Congress provided that the 1996 amendments should apply to cases "in which the defendant is convicted on or after [April 24, 1996]." P.L. 104–132, Sec. 211 (April 24, 1996). Although Meksian was convicted in 1998, the con-

duct that formed the basis of his conviction occurred in 1991—well before the enactment of the 1996 amendments. Applying the amendments to persons who were convicted after the date of the amendment, but whose behavior leading to conviction could have occurred before that time, may implicate the ex post facto provision of the Constitution. We do not, however, have to concern ourselves with that question because the connection between Meksian's offense and the loss fails to justify restitution under either test because Meksian's conduct did not directly cause the bank's loss.

754 F.2d at 1393. The court in *Keith* determined that even if the victim had left because of the threat, the restitution order was proper. The court found that "[t]he possible intervening cause ... is *directly related* to the assault. He cannot seriously contend that the victim's loss of wages was not a 'result of [the] offense.'" *Id.* at 1393 (citation omitted) (emphasis added).

Finally, in *United States v. Spinney*, 795 F.2d 1410, 1416–17 (9th Cir.1986), this court upheld a restitution order for a criminal "offense resulting in bodily injury to a victim." In *Spinney*, the defendant was convicted of two counts of conspiracy to commit simple assault. Spinney enlisted the help of friends to scare two brothers who had beaten up one of Spinney's female friends. Spinney armed his friends with a loaded .45 and a shotgun before going to confront the brothers. The confrontation turned into a kidnapping and one of the brothers died. The court in *Spinney* stated that "one court of appeals has concluded that in order to establish grounds for restitution under section 3579, 'the government need not prove that the defendant was *directly* responsible for the loss.'" *Id.* at 1417 (quoting *United States v. Richard*, 738 F.2d 1120, 1123 (10th Cir.1984)). The court then stated, "A restitution order is authorized if the defendant created the circumstances under which the harm or loss occurred." *Id.* The court in *Spinney* upheld the restitution order finding that "[t]he injuries that the [victims] sustained in this case are *directly related* to the conspiracy to assault them." *Id.* (emphasis added).

Notwithstanding the inconsistent language, we find these cases may all be reconciled on their facts. In *Tyler*, this court clearly rejected a mere "but for" argument by holding that the defendant did not directly cause the government's loss by cutting down the trees, even though his actions allowed the government to possess the timber in the first place. *Tyler*, 767 F.2d at 1351–52. This court's decisions in *Keith* and *Spinney* do not contradict the result in *Tyler*. Both *Spinney* and *Keith* dealt with intervening causes that were *directly related* to the original offense conduct. *Tyler*, however, did not deal with a *directly related* intervening cause.

▪ As this prior case law suggests, the main inquiry for causation in restitution cases becomes whether there was an intervening cause and, if so, whether this intervening cause was directly related to the offense conduct. Applying this principle, it is easy to understand the requirement of restitution in *Keith* and *Spinney*, where the intervening causes were directly related to the offense conduct, and the rejection of restitution in *Tyler*, where the intervening cause was not directly related.

Here, as in *Tyler*, the intervening cause was not directly related to the offense conduct. In *Tyler*, the court found that the direct result of the loss was not the defendant's theft of the timber, but rather the intervening decision of the government to hold onto the timber until the timber market collapsed, and then to sell the timber at a depressed price. In the same vein, it was not Meksian's false statements that caused the bank's loss, but the intervening reliance by Mechanics and the SBA on a third party's inaccurate environmental risk report. If the government in *Tyler* had sold the stolen timber when it was repossessed, there would have been no loss. Similarly, had Mechanics received an accurate environmental report, Meksian would never have been given the loan.

Meksian did not falsely represent the value of the collateral. The bank satisfied itself through relying on an inaccurate environmental report that there was sufficient collateral to cover the loan. The loss was caused by the contaminated nature of the loan property, not by the defendant's false statements. If the bank knew that the property was contaminated, it never would have used the property as collateral for the loan. Under the circumstances, we find the government's argument that its loss was a result of the offense tenuous at best. The conduct of the defendant had nothing to do with the bank's loss.

On this basis, we find the district court erred in ordering the defendant to make restitution of the bank's loss.

REVERSED and REMANDED with directions to vacate its order of restitution.