**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tyrus Simon FOLLET, Defendant–
Appellant.**

**No. 00–30339.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 2001

Filed Oct. 18, 2001

John P. Rhodes, Federal Defenders of Montana, Missoula, Montana, for the defendant-appellant.

Klaus P. Richter and Marcia Good Sept, United States Attorney, Billings, Montana, for the plaintiff-appellee.

Before: LAY,[1] TROTT and BERZON, Circuit Judges.

BERZON, Circuit Judge:

Tyrus Follet, a resident of the Fort Peck Indian Reservation in Montana, had a two-year, intermittent sexual relationship with his niece, beginning when she was approximately 14 years old. After she complained of his behavior to a school counselor, Follet was indicted for sexual abuse of a minor. He pleaded guilty. Before Follet was sentenced, the victim sought and received psychological counseling from the Fort Peck Tribes Crisis Center, a government-funded facility that provides its services to eligible clients at no cost to them.

The district court sentenced Follet to eighteen months imprisonment and-as relevant here-ordered him to (1) pay $835.60 in restitution to the Crisis Center and (2) pay the victim's future counseling costs, should any be incurred. Follet challenges both aspects of the restitution order as contrary to the governing statutes, the first because the past services were provided at no cost to the victim, and the second because the need for and amount of any future services were not established.

■ This court reviews de novo the legality of a restitution order. *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir.1998). We agree with the defendant that the restitution orders were improper.

### Analysis

■ Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority. *United States v. Hicks*, 997 F.2d 594, 600 (9th Cir.1993). The courts have such authority under the Victim and Witness Protection Act of 1982 ("VWPA"), providing for discretionary awards of restitution after conviction for certain crimes, 18 U.S.C. § 3663, and under the Mandatory Victims Restitution Act of 1996 ("MVRA"), providing for mandatory restitution for crimes of violence and property offenses, 18 U.S.C. § 3663A. Also included in § 3663A are

1. The Honorable Donald W. Lay, United States Circuit Judge for the Eighth Circuit,     sitting by designation.

violations of 18 U.S.C. § 1365, relating to tampering with consumer products. Awards under the VWPA and the MVRA are issued in accordance with procedures set forth in 18 U.S.C. § 3664.

There are, however, several other restitution provisions contained in Title 18 which apply only to offenses located in the same chapter. The award challenged in this case was issued under one such provision, 18 U.S.C. § 2248, which provides for mandatory restitution for crimes within the chapter containing the "sexual abuse of a minor" provision, 18 U.S.C. § 2243, to which Follet pleaded guilty. The more general VWPA and MVRA provisions are also, however, of some relevance in the statutory problem before us, as we shall see.

■ To decide whether § 2248 permits a court to order restitution where the entity providing services to the victim does not charge the victim for them, we begin, as always, with the statutory language. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747, 750 (9th Cir.1999). Section 2248 provides for mandatory orders of restitution in the "full amount of the victim's losses . . . ." § 2248(a), (b)(1). Paragraph (3), in turn, defines the term "full amount of the victim's losses" to include "any costs incurred by the victim for . . . . medical services relating to physical, psychiatric, or psychological care." § 2248(b)(3)(A). The "victim" is "the individual harmed as a result of a commission of a crime under this chapter." § 2248(c). Finally, any order of restitution under § 2248 is to be "issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." § 2248(b)(2).

■ The Crisis Center "incurred" "costs . . . for medical services relating to . . . . psychological care" on account of Follet's crime. That the Crisis Center was not the "victim" of Follet's crime, however, seems obvious. The crime was sexual abuse of a minor, a crime that may—indeed, usually will—result in psychological harm to the girl abused. That the girl will seek and obtain counseling for that harm is not, though, assured by the fact that the crime was committed (although we may hope that she does), and that she will seek such counseling, if she does, from a free clinic rather than one for which she pays, while perhaps predictable if one knows her economic circumstances, is certainly not something one can foresee from the fact that the crime was committed. So the connection between the commission of statutory rape and the economic cost to the Crisis Center for the services provided to Follet's niece is simply too attenuated to bring the Crisis Center within the statutory definition of "victim." We conclude that the Crisis Center was not the victim of Follet's crime, even though it ended up bearing some of the economic loss Follet caused.

That the girl, not the Crisis Center, was the only victim is not, however, necessarily the end of the restitution issue under the relevant statutory provisions. Section 2248 cross-references § 3664 as governing the issuance of restitution orders; § 3664 specifically provides that in some circumstances, courts must order restitution to be paid to someone other than the victim, where that other person (an insurance company for example) "provided or is obligated to provide . . . compensation" to the victim "with respect to a loss." § 3664(j)(1). It was pursuant to this provision that the district court order restitution to the Crisis Center, treating the Center as equivalent to an insurance company or a benefactor who agreed to pay costs attributable to the crime that the victim would otherwise have been required to pay.

To thus construe the statute surely would make a great deal of practical sense, we concede: The psychologists treating the victim are going to be paid for their time by *someone*, whether the victim is billed for that time or not. Whether the entity that covers the cost of the services provided does so under circumstances where the victim will have to pay if the cost-covering entity does not is certainly not part of the defendant's calculus in committing the crime (assuming that he has engaged in any weighing of his options in deciding whether sexually to abuse a minor, a strange assumption to begin with), and is no measure of the economic value of the injury caused by his crime.

We nonetheless conclude that Congress made exactly that distinction—between economic costs that the victim is obligated to pay to the provider of services whether or not another entity reimburses the victim for those costs and those that the victim is not so obligated to pay—in devising the special restitution scheme contained in § 2248. Our determination is largely governed by the Supreme Court's decision in *Hughey v. United States,* 495 U.S. 411, 418, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), holding that § 3664 establishes the procedures for ordering restitution, but that that section does *not* "fix[ ] the substantive boundaries of such orders." As a consequence, the third-party restitution provisions of § 3664, even if they could otherwise be read somewhat metaphorically to cover "compensation" to victims in the form of direct services, cannot trump any substantive limitations contained in § 2248 regarding the costs that can be included in restitution orders.

■ Turning therefore to the precise terms of § 2248: Unlike some of the other restitution provisions—of which more later—§ 2248 provides specifically that only "any costs *incurred by the victim*" are

subject to restitution orders. § 2248(b)(3) (emphasis added). A cost for which the victim will never have to pay because the services will be provided directly by a governmental or charitable organization is not "incurred" by the victim, even if that organization will incur costs for the benefit of the victim. As we have noted previously in connection with an identical statutory provision, " 'Incur' means 'become liable or subject to.' " *United States v. Laney,* 189 F.3d 954, 966 (9th Cir.1999) (quoting Webster's Third New Int'l Dictionary 1146 (1986)). Ordinary citizens do not, for example, individually "incur costs" for police or fire services, or for sending their children to their own communities' public school, even though those services and that education cost a great deal, since the citizens are not obligated to pay the government for its expenditures.

The term "amount of the victim's losses," also used in § 2248, would independently point toward the same conclusion. § 2248(b)(1). One does not ordinarily "lose" an amount of money she will under no conceivable circumstances be required to pay, although someone else will. Regardless of whether the latter reasoning would be conclusive, though, "amount of the victim's losses" is *defined* for statutory purposes as "any costs incurred by the victim," § 2248(b)(3), so we need not look beyond the latter language in understanding Congress's meaning.

■ That this particular restitution provision limits the restitution that can be ordered to the cost of services the victim has some individual obligation to pay for (even if someone else has an obligation *to the victim* to reimburse her for that cost) is all the more clear in light of the fact that the language used appears to have been carefully chosen. Other restitution provisions use different language, and may well—we have found no case law on the

question—permit orders of restitution to governmental or charitable institutions that provide covered services to the victim.

Section 3663, for example, specifically allows courts to order "restitution to persons other than the victim of the offense" but only "if agreed to by the parties in a plea agreement." § 3663(a)(1)(A); *see also* § 3663A(a)(3) (providing for mandatory restitution for victims of certain crimes, and containing similar language regarding third-party restitution). There is no parallel language regarding third-party restitution—even limited to plea agreements—in § 2248. Further, in defining the appropriate amount of a restitution order, § 3663 permits courts to order not the costs incurred by the victim but "an amount *equal to the cost of necessary ... psychological care.*" § 3663(b)(2)(A) (emphasis added); *see also* § 3663A(b)(2)(A) (same language). That locution, unlike the pertinent phrase in § 2248, appears clearly to allow restitution to reflect the value of services provided, no matter who is obligated to pay for them.

■ It is noteworthy in this regard, perhaps, that §§ 3663 and 3663A, although broader in these respects than § 2248, are narrower in another: Under § 3663(b)(2)(A) and § 3663A(b)(2)(A), restitution orders can cover psychological care only when there has been a bodily injury, *Hicks,* 997 F.2d at 600–601, while restitution orders under § 2248 are subject to no such limitation. We may speculate that Congress permitted restitution of costs broader in their potential economic impact under §§ 3663 and 3663A precisely because of the limited circumstances in which costs of psychological counseling may be provided under those sections. But whether this speculation is correct or not does not matter. Rather, unless we

attribute to Congress extreme carelessness in choosing very different language in closely related provisions,[2] we are constrained to conclude that the difference was intentional, meant to indicate a distinction between a scheme in which the focus in a restitution order may be on the economic value of the services provided and a scheme—embodied in § 2248—in which the focus must be instead upon an economic incidence, that is, upon who is responsible for paying for the services. *See United States v. Fiorillo,* 186 F.3d 1136, 1148 n. 12 (9th Cir.1999) (" '[U]se of different language creates the inference that Congress meant different things.' " (quoting *Moore v. Harris,* 623 F.2d 908, 914 (4th Cir.1980))).

We conclude that the restitution order covering the victim's past psychological services is invalid because it covered costs that the victim did not incur.

Follet maintains that the restitution order is improper and should be vacated for the additional reason that the order requires that he pay for the victim's future counseling services, if she incurs any. Any order regarding future counseling services, Follet argues, is premature. The government agrees that the order as it now stands is contrary to law because the court failed to determine what the future costs would be, but requests that the case be remanded so that the court can so determine.

It is true, as the government points out, that *Laney,* 189 F.3d at 967, construing a restitution provision identical to § 2248 but applicable to a different chapter of Title 18, held that a district court can order restitution in a definite amount for future therapy costs. In *Laney,* however, the government submitted both proof that the defendant *would* need such future

---

**2.** We note as well that § 2248 was extensively amended in 1996, by the same legislation that

added § 3663A and extensively amended § 3663. *See* Pub.L. 104–132, Title II.

counseling ("Jane Doe One and her family will not 'discover' in the future that they need counseling; they already know that they do") and a basis for "estimat[ing] ... with reasonable certainty" the cost of such future counseling. 189 F.3d at 967 & n. 14. The contrast with this case could not be more stark: Here, the presentence report states only that "there is the *possibility* that future counseling and services will be provided" (emphasis added); the defendant specifically objected before sentencing to the lack of documentation regarding restitution; and the district court made no finding either that Follet's niece would need future counseling or—not surprisingly, given that even the need for therapy was not clear—the cost of any future counseling. Moreover, since we have held that any such cost can be the subject of a restitution order only if incurred by the victim in the sense we have discussed, there is an additional hole in the record as it pertains to supporting an order for restitution of future therapy costs.

■ Under these circumstances, it does not appear that there are any facts that the government can present on remand that would meet the statutory standards for a restitution award *as of the date of the original sentencing.* As the presentence report indicates and nothing in the record refutes, that the victim would incur future therapy costs was, at that point, nothing more than a *possibility.* The statutory scheme simply does not allow for restitution orders based on such speculation rather than proof. Rather, the statute specifically requires that the presentence report provide an accounting of the losses to the victim, § 3664(a), and places the burden of proof in demonstrating the amount of the victim's loss on the government, § 3664(e). One cannot bear the burden of proving the amount of a loss by a preponderance of the evidence when it is no more than possible that the loss will occur at all. The problem, in other words, is not that the record

simply fails to establish the requisites for restitution of future therapy costs, but that it establishes that restitution for such costs would have been improper. There is therefore no basis for a remand to allow the government to disprove what was proved before about the likelihood of future therapy for the victim, namely, that it was no more than possible that such therapy would be required.

■ At the same time, the statute does specifically provide for amended restitution orders on the petition of the victim "[i]f the victim subsequently discovers further losses." § 3664(d)(5). Since it may have appeared to the victim that such losses were covered by the existing restitution order, it would be inappropriate to foreclose or time-bar any such petitions that could have been filed during the pendency of this appeal. Nor would such petitions prejudice Follet, as the district court's order would have led him as well to expect to pay for future costs. We therefore remand to permit the amendment of the restitution order if the requirements of § 3664(d)(5) are met with regard to any costs "incurred by the victim" for psychological therapy after the original sentencing (within the meaning of the quoted phrase here adopted), tolling the statutory sixty-day petition period during the pendency of this appeal. *See Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 595–98 (9th Cir.1991) (tolling a statute of limitations when the plaintiff missed the deadline because of reliance on a district court order).

### Conclusion

We REVERSE the district court's restitution order and REMAND this matter for proceedings consistent with this opinion.