**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jacob DE LA FUENTE, Defendant–Appellant.**

**No. 03–50056.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2003.

Filed Dec. 29, 2003.

768

Maria E. Stratton, Federal Public Defender, Los Angeles, CA, for the defendant-appellant.

Rodrigo A. Castro–Silva, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Before: B. FLETCHER, RYMER, and GRABER, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Jacob De La Fuente pled guilty to two counts of mailing threats to injure in violation of 18 U.S.C. § 876(c). Pursuant to the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A, the district court ordered De La Fuente to pay $39,492.56 in total restitution to the United States Postal Service (USPS), the Los An-

geles County Fire Department's Hazardous Materials Division (LA HazMat) and the Los Angeles County Health Department (LAHD). De La Fuente challenges the district court's restitution order on appeal. He argues that the MVRA does not apply because his was not a "crime of violence." He also argues that USPS, LA HazMat and LAHD do not qualify as victims entitled to restitution under the MVRA. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

On October 15 and 16, 2001, De La Fuente mailed two letters that contained a white powder and that included notes with the following text: "Surprise Anthrax Yor[sic] it Die Bitch." De La Fuente sent his first letter to Diane Olin, a former boss. He sent his second letter to Laura Caudillo, a former girlfriend.

A USPS employee at a mail processing and distribution center in California found the letter addressed to Laura Caudillo when it broke open during processing. Acting in response to the white powder that spilled out of De La Fuente's letter, USPS evacuated 229 employees from its processing and distribution center, lost 1,374 employee work hours, and incurred cleanup costs, for a total monetary loss of $37,550. Three LA HazMat officials also spent six hours responding to the incident, for a total LA HazMat loss of $1,609.92. LAHD tested De La Fuente's letters for anthrax; its testing services were valued at $332.64. LAHD's tests established that the white powder in De La Fuente's letters was not anthrax.

On March 29, 2002, the government filed an indictment charging De La Fuente with two counts of mailing threats to injure in violation of 18 U.S.C. § 876. After De La Fuente pled guilty to both counts, the

district court sentenced him to thirty-seven months' imprisonment and three years' supervised release. The district court also ordered De La Fuente to pay $37,550 in restitution to USPS, $1,609.92 to LA HazMat and $332.64 to LAHD.

## II.

██ Congress passed the MVRA in 1996 as a supplement to the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. § 3663. *See United States v. Grice,* 319 F.3d 1174, 1177 (9th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 123 S.Ct. 2625, 156 L.Ed.2d 641 (2003). Restitution under the VWPA is discretionary, and the district court must consider a defendant's resources when deciding if restitution is appropriate. 18 U.S.C. § 3663(a)(1)(A), (B). The MVRA eliminates district courts' discretion with respect to restitution for certain classes of crimes. 18 U.S.C. § 3663A(a)(1). If the MVRA applies, a restitution order is mandatory regardless of the defendant's ability to pay. *Id; see also Grice,* 319 F.3d at 1177.

The MVRA applies, *inter alia,* to "crime[s] of violence," as defined in 18 U.S.C. § 16, if an "identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1). On appeal, De La Fuente argues that his was not a crime of violence subject to the MVRA.

## A.

██ Because De La Fuente challenges the district court's crime-of-violence

determination for the first time on appeal,[1] we review that determination only for plain error. Fed.R.Crim.P. 52(b); *see also United States v. Zink,* 107 F.3d 716, 718 (9th Cir.1997) (applying plain error standard in restitution context); *United States v. Johnson,* 183 F.3d 1175, 1178–79 (10th Cir.1999) (applying plain error standard to crime-of-violence determination made under MVRA). An error is plain if it is clear or obvious under current law. *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results. *See United States v. Thompson,* 82 F.3d 849, 855–56 (9th Cir. 1996). Plain error merits reversal if it affected the defendant's substantial rights and if it seriously affected the fairness, integrity or public reputation of judicial proceedings. Fed.R.Crim.P. 52(b); *Olano,* 507 U.S. at 735–36, 113 S.Ct. 1770.

## B.

██ A crime qualifies as a "crime of violence" if it is

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

De La Fuente never challenged the government's crime-of-violence analysis and, when the district court noted in issuing its ruling that there was "no dispute" regarding the crime-of-violence determination, De La Fuente did not object.

---

1. De La Fuente did not raise the issue of restitution in the sentencing memorandum he submitted to the district court. At his sentencing hearing De La Fuente did argue that the MVRA should not be applied to him, but only "based on the fact that the intended victims in this case were not postal workers."

18 U.S.C. § 16. In this case, only § 16(a) is potentially applicable. The crime of sending a threat to injure is complete when the perpetrator places his threatening letter in the mail, and there is little risk of physical force being used in the course of writing or mailing a threatening letter. *See United States v. Nilsen,* 967 F.2d 539, 543 (11th Cir.1992) (per curiam) (crime of mailing threatening letters with intent to extort a thing of value, 18 U.S.C. § 876(b), was complete when defendant put letters in the mail).

In deciding whether the district court committed plain error in determining that the crime of mailing a threat to injure is a crime of violence under § 16(a), we apply the categorical approach set out in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *See United States v. Pimentel–Flores,* 339 F.3d 959, 967–68 (9th Cir.2003) (applying *Taylor's* categorical approach to the 16–level crime-of-violence enhancement in U.S.S.G. § 2L1.2). We have not yet applied *Taylor* in the specific context of the MVRA, but the text of § 16 mandates a categorical inquiry because it directs the court's attention to the "element[s]" and "nature" of the defendant's crime. *See United States v. David H.,* 29 F.3d 489, 493–94 (9th Cir.1994) (per curiam) (interpreting materially identical wording in 18 U.S.C. § 5032); *see also United States v. Hernandez–Castellanos,* 287 F.3d 876, 879 (9th Cir.2002) (applying categorical approach to crime-of-violence determination made under § 16); *Sareang Ye v. INS,* 214 F.3d 1128, 1133 (9th Cir.2000) (same).

■ When applying *Taylor's* categorical approach, we first "look to the statutory definition of the crime, rather than to the defendant's specific conduct." *United States v. Sandoval–Venegas,* 292 F.3d 1101, 1106 (9th Cir.2002) (quoting *United States v. Casarez–Bravo,* 181 F.3d 1074, 1077 n. 1 (9th Cir.1999)). If the statute reaches both conduct that would constitute a crime of violence and conduct that would not, we turn to a modified categorical approach, which allows us to examine documentation or judicially noticeable facts that clearly establish that the defendant's actual offense qualifies as a crime of violence. *See id.*

### C.

■ The two elements of the crime of mailing a threat to injure are that (1) the defendant's letter contained a threat to injure and (2) that the defendant knowingly caused the threatening letter to be deposited in the mail. 18 U.S.C. § 876(c);[2] *see also United States v. Sirhan,* 504 F.2d 818, 819 (9th Cir.1974) (per curiam). Although we have never decided whether the threat to injure required by § 876(c) satisfies the "use, attempted use, or threatened use of physical force" requirement in § 16(a), we have held that a criminal statute requiring the creation and use of a "fear of . . . unlawful injury" includes the element of a "threatened use of physical force." *See David H.,* 29 F.3d at 494 (explaining that California's robbery statute requiring the use of either "force" or "fear" satisfies the use, attempted use or threatened use of physical force requirement in § 16(a) where "fear" is defined as "fear of an unlawful injury to the person"); *see also United States v. Ceron–Sanchez,* 222 F.3d 1169, 1173 (9th Cir.2000) (holding that provision of Arizona's assault statute requiring that the defendant intentionally place the victim in "reasonable apprehension of imminent physical injury" satisfies the "use, attempted use, or threatened use

---

**2.** This statutory section also makes it a crime to send kidnapping threats. We take no position as to whether mailing a threat to kidnap also qualifies as a crime of violence.

of physical force" requirement in § 16(a)). Because the threat of injury required for a conviction in this case is not materially different from the fear or apprehension of injury required by the statutes at issue in *David H.* and *Ceron–Sanchez*, the district court did not plainly err in deciding that the elements of De La Fuente's crime satisfy § 16(a)'s "threatened use of physical force" requirement.[3]

De La Fuente argues that his own offense conduct undermines our analysis because a threat of anthrax poisoning is not a threat of forceful conduct, as the term "force" ordinarily would be understood. We are not persuaded. Anthrax is a physical substance that causes injury to the human body, and De La Fuente's letters clearly threatened death by way of physical contact with anthrax spores. The injury and pain caused by anthrax infection may not always be immediately obvious to the person exposed, but the bacteria's physical effect on the body is no less violently forceful than the effect of a kick or blow.[4] *See Ceron–Sanchez*, 222 F.3d at 1172 (adopting Black's Law Dictionary definition of "physical force" as "[f]orce ap-

plied to the body; actual violence") (alteration in original).

## III.

■■■ In criminal cases, restitution may compensate victims only "for actual losses caused by the defendant's criminal conduct." *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 926 (9th Cir.2001). A "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). De La Fuente argues that USPS, LA HazMat and LAHD are not "true victims" entitled to restitution in this case because any costs they incurred were "too collateral to be charged to [De La Fuente's] offense conduct" and because they were not "harmed" within the meaning of the statute.

## A.

■■■ We review de novo the district court's application of the MVRA and its conclusion that USPS, LA HazMat and LAHD are victims of De La Fuente's crime. *United States v. Hackett*, 311 F.3d 989, 991 (9th Cir.2002) ("The legality of an

---

**3.** We note that this conclusion ensures consistency with the decisions of our sister circuits. The Fourth and Eighth Circuits have concluded that mailing threatening communications is a crime of violence. *United States v. Weddle*, 30 F.3d 532, 538 n. 1 (4th Cir.1994); *United States v. Left Hand Bull*, 901 F.2d 647, 649 (8th Cir.1990). The First and Seventh Circuits have similarly held that mailing threats directed against the President, 18 U.S.C. § 871, is crime of violence. *United States v. Santos*, 131 F.3d 16, 21 (1st Cir. 1997); *United States v. McCaleb*, 908 F.2d 176, 178 (7th Cir.1990). No appellate court appears to have reached a contrary conclusion.

**4.** We have recognized that creation of a latent risk of injury does not meet the requirements of § 16(a) where the defendant directs no physical force against the person injured. *See*

*United States v. Hernandez–Castellanos*, 287 F.3d 876, 880 (9th Cir.2002) (holding that reckless endangerment under Arizona law is not a crime of violence). The statute under which De La Fuente was convicted, 18 U.S.C. § 876(c), does not raise the same concerns discussed in *Hernandez–Castellanos* because the crime of mailing threats to injure does not encompass conduct like the non-violent recklessness we found troubling when analyzing Arizona's reckless endangerment law. *Id.* (explaining that violation of Arizona's endangerment statute does not necessarily involve the use or threatened use of physical force because the statute "was designed to punish such conduct as ... abandoning life-threatening containers attractive to children") (quoting *State v. Hinchey*, 165 Ariz. 432, 799 P.2d 352, 357 (1990)).

order of restitution is reviewed de novo.") (quoting *United States v. Stoddard,* 150 F.3d 1140, 1147 (9th Cir.1998)); *United States v. Sanga,* 967 F.2d 1332, 1334 (9th Cir.1992) (reviewing de novo victim determination made pursuant to the VWPA). Factual findings made in support of that conclusion are reviewed for clear error, including factual findings regarding causation. *Hackett,* 311 F.3d at 991. If the district court's restitution order falls within the statutory framework, we review it for abuse of discretion. *Id.*

### B.

De La Fuente first argues that any costs incurred by USPS, LA HazMat and LAHD were not direct and proximate results of his crime.

### 1.

██ "[T]he main inquiry for causation in restitution cases [is] whether there was an intervening cause and, if so, whether this intervening cause was directly related to the offense conduct." *United States v. Meksian,* 170 F.3d 1260, 1263 (9th Cir. 1999), *quoted in Hackett,* 311 F.3d at 992; *see also Gamma Tech,* 265 F.3d at 928 ("Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct."). "[W]e have approved restitution awards that included losses at least one step removed from the offense conduct itself," but "[t]he causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." *Gamma Tech,* 265 F.3d at 928.

We recently applied these principles in *Hackett,* where we held that a defendant who pled guilty to aiding and abetting methamphetamine manufacture could be ordered to pay restitution to an insurance

company for property damage caused when a co-defendant started a fire by placing a jar of chemicals used to manufacture methamphetamine on a hot plate. 311 F.3d at 992–93; *see also Gamma Tech.,* 265 F.3d at 927–28 (holding that defendant who received kickbacks from subcontractors could be ordered to pay restitution to Navy contractor because kickback scheme inflated price subcontractors charged contractor). Hackett procured the supplies his co-defendants used to manufacture methamphetamine, and he had "knowledge and understanding of the scope and structure of the enterprise and of the activities of [his co-defendants]." *Hackett,* 311 F.3d at 993. Although we recognized that there were "multiple links in [the] causal chain," we held that Hackett's conduct was directly related to the resulting loss. *Id.*

We reached the opposite conclusion in *Meksian,* where we reversed a restitution order because of an inadequate causal link. 170 F.3d at 1263. Manouk Meksian pled guilty to one count of making false statements to a federally insured financial institution in violation of 18 U.S.C. § 1014; Meksian submitted false tax returns to a Small Business Administration (SBA) lender, Mechanics National Bank, in order to obtain a lower interest rate on a loan. *Id.* at 1261. Meksian eventually defaulted on the same loan after he was convicted of an unrelated drug charge. *Id.* at 1261–62. When the SBA tried to foreclose on the property Meksian had used to secure the loan, the SBA learned that the property was worthless because of environmental contamination. *Id.* at 1262. The SBA lost the entire value of its loan, and the district court ordered Meksian to pay restitution to the SBA as part of the sentence for Meksian's § 1014 conviction. *Id.* We reversed the district court's restitution order. The SBA's loss was caused not by Meksian's offense conduct but "by the con-

taminated nature of the loan property" and by the SBA's reliance on an inaccurate environmental risk report prepared by a third party. *Id.* at 1263. Because Meksian's false statements had nothing to do with the value of the collateral, he could not be ordered to make restitution. *Id; see also United States v. Tyler,* 767 F.2d 1350, 1351–52 (9th Cir.1985) (holding that defendant could not be ordered to pay restitution where government's loss resulted not from defendant's illegally cutting down protected trees but from government's decision to hold on to the recovered logs during a period of declining prices).

2.

▮▮▮▮ The record in this case establishes that the losses incurred by USPS, LA HazMat and LAHD were all directly related to De La Fuente's offense conduct. Depositing the Olin and Caudillo letters in the mail was a necessary element of De La Fuente's crime, 18 U.S.C. § 876(c), and that act led directly to the possible anthrax exposure in a USPS mail processing center. *See United States v. Quillen,* 335 F.3d 219, 226 (3d Cir.2003) (affirming restitution order in fake anthrax case similar to this one and holding that costs incurred in cleanup of mail room exposed to fake anthrax were losses "directly resulting" from defendant's mailing of threatening

letter). A cleanup and decontamination effort conducted by local emergency response agencies also was a necessary and foreseeable result of De La Fuente's offense conduct. No independent intervening cause can be blamed for the USPS, LA HazMat and LAHD losses. *Cf. Meksian,* 170 F.3d at 1263; *Tyler,* 767 F.2d at 1351–52. And here, as in *Gamma Tech* and *Hackett,* the causal chain is not extended so far "as to become unreasonable." *Gamma Tech,* 265 F.3d at 928, *quoted in Hackett,* 311 F.3d at 993. USPS, LA HazMat and LAHD incurred costs directly and proximately caused by De La Fuente's offense conduct, and the district court did not err in ordering De La Fuente to pay them restitution.[5]

C.

We are not persuaded by De La Fuente's additional argument that USPS, LA HazMat and LAHD were not "harmed" within the meaning of the MVRA because they only "incurred costs." The MVRA applies when a victim or victims has suffered either a physical injury or a "pecuniary loss," 18 U.S.C. § 3663A(c)(1)(B), and the statute specifically provides for restitution in cases that involve economic harm but not bodily injury, *id.* § 3663A(b)(1).[6] As we recently not-

---

**5.** In *United States v. Follet,* 269 F.3d 996, 999–1001 (9th Cir.2001), we held that a defendant convicted of sexually abusing a minor could not be ordered to pay the costs incurred by a free clinic that provided counseling services to the defendant's victim. We explained in *Follet* that the sexual abuse victim's decision to seek counseling at a free clinic was likely not foreseeable to the defendant, *id.* at 999; here, by contrast, the potential effect of anthrax letters on a USPS processing center was foreseeable to De La Fuente when he mailed the letters in October 2001. The restitution order at issue in *Follet* also was governed by a statutory restitution provision specific to sexual abuse crimes that

limits restitution to costs incurred by the person sexually abused. 18 U.S.C. § 2248(b)(3); *see also Follet,* 269 F.3d at 999

**6.** This section of the MVRA provides that when a defendant's crime results in property damage, loss or destruction, the defendant should be ordered to

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to—

(i) the greater of—

ed in Hackett, the MVRA "directs that both physical injury and financial loss are compensable." 311 F.3d at 992.

## IV.

For the foregoing reasons, the district court's restitution order is AFFIRMED.

(I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing, less

(ii) the value (as of the date the property is returned) of any part of the property that is returned[.]

18 U.S.C. § 3663A(b)(1). Although these calculation instructions are not easy to apply where property is rendered temporarily unusable, rather than completely destroyed or permanently damaged, we agree with the Third Circuit that in this specific factual situation the districts court's "only practical option was to order [De La Fuente] to pay the cost of ensuring that the mail room was in the same condition as just prior to the time it became unusable." *United States v. Quillen,* 335 F.3d 219, 222 (3d Cir.2003). We also note that Congress' use of the phrase "pay an amount equal to" in this section of the statute supports our conclusion that the district court was not required to limit its restitution order to De La Fuente's intended victims. *See United States v. Cliatt,* 338 F.3d 1089, 1091 (9th Cir.2003).