115 P.3d 274 (2005)
STATE of Washington, Respondent,
v.
Ferguson HIETT, Petitioner.
State of Washington, Respondent,
v.
Ian Freilinger, Petitioner.
No. 75499-3.
Supreme Court of Washington, En Banc.
Argued March 8, 2005.
Decided June 30, 2005.
*275 Nancy P. Collins, Washington Appellate Project, Dana M. Lind, Nielsen Broman & Koch PLLC, Seattle, for Petitioners.
E. Bradford Bales, Carla Barbieri Carlstrom, King County Prosecuting Attorney's Office, Seattle, for Respondent.
CHAMBERS, J.
¶ 1 Washington's juvenile restitution statute makes all participants convicted of a crime jointly and severally responsible for all restitution that must be paid because of the crime. The petitioners argue that, properly read, the statute is less broad and makes them jointly and severally responsible only for the damage they actually caused while committing the crime. Based on the plain language of the statute, we disagree and affirm the courts below.

FACTS
¶ 2 On October 5, 2001, David McNulty stole a car belonging to Hee Koh from the Edmonds Park and Ride. After driving around for some time, he picked up Ferguson Hiett, Ian Freilinger, and another passenger at a park in Burien. As they left the park, Deputy Keller began to follow them in a marked patrol car. Approximately two blocks from the park, after the car ran a stop sign in a Fred Meyer parking lot, Hiett and Freilinger jumped from the moving car and fled. After describing Hiett and Freilinger to dispatch, Deputy Keller turned on his siren and lights. In response, McNulty drove faster and erratically. After a few more blocks, McNulty turned into a parking lot owned by the Les Schwab Tire Company. He was going too fast and, after hitting a curb, the car spun out of control, collided with a Les Schwab truck, and finally crashed into the storefront. McNulty was apprehended at the scene of the accident, and Hiett and Freilinger were apprehended later that evening.
¶ 3 Hiett and Freilinger were charged with taking a motor vehicle without permission, former RCW 9A.56.070 (1975), recodified as RCW 9A.56.075(1), and accepted deferred dispositions.[1] In addition, McNulty was prosecuted separately for attempting to elude police pursuit. At a joint restitution hearing, the three and the other passenger were found jointly and severally responsible for Koh's missing property, damage to Koh's *276 car, and damage to Les Schwab's truck and building.
¶ 4 Hiett and Freilinger appealed, and after consolidation, the Court of Appeals affirmed the restitution order. We accepted review, 153 Wash.2d 1001, 103 P.3d 1247 (2005), and affirm.

ANALYSIS
¶ 5 A trial court's authority to impose restitution is derived from statute. State v. Enstone, 137 Wash.2d 675, 682, 974 P.2d 828 (1999). "Review of a juvenile court's restitution order is limited to whether statutory authority exists for the imposed restitution." State v. J.P., 149 Wash.2d 444, 449, 69 P.3d 318 (2003) (citing State v. Landrum, 66 Wash.App. 791, 795, 832 P.2d 1359 (1992)). The juvenile restitution statute makes juveniles jointly and severally responsible for restitution for any loss or damage caused by a crime:
the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed.... If the respondent participated in the crime with another person or other persons, all such participants shall be jointly and severally responsible for the payment of restitution.
RCW 13.40.190(1) (emphasis added).
¶ 6 Hiett and Freilinger argue that the law authorizes restitution only when the damage is causally connected to the juvenile's individual conduct and that because the property loss and damage occurred before and after they rode in the car, these losses cannot be causally connected with their conduct. This is a strained reading of the statute. The relevant causal connection is between the damage and the committed offense, which of course includes the conduct, not between the damage and merely the juvenile's individual offense. Since all defendants were convicted of the crime, all defendants are jointly and severally responsible for the restitution. RCW 13.40.190(1).
¶ 7 Essentially, the defendants contend that case law has limited restitution by requiring a causal relation between the defendants' conduct and the victim's injury. But this misreads our case law. Our legislature clearly intended to make restitution widely available to the victims of crimes, at least when their injuries were a foreseeable consequence. To accomplish this legislative purpose, courts will look not only to the abstract elements of the crime but also to the defendants' actual conduct. Landrum, 66 Wash.App. 791, 832 P.2d 1359, is illustrative. In Landrum, two defendants were charged with first degree child molestation based on sexual contact with a minor. Id. at 794, 832 P.2d 1359. After entering Alford[2] pleas to fourth degree assault, both were ordered to pay restitution for their victims' counseling costs. Id. Both appealed the restitution order, arguing that the legislature intended restitution for counseling to be limited to victims of sex crimes and that the generally defined elements of fourth degree assault were not reasonably related to such counseling. Id. at 798-99, 832 P.2d 1359. The court upheld the restitution orders, holding that a court looks "to the underlying facts of the charged offense, not the name of the crime to which the defendant entered a plea." Id. at 799, 832 P.2d 1359. Put another way, since the victims' injuries were a reasonably foreseeable consequence of the underlying facts of the crime, the crime was reasonably related to the victims' counseling expenses.
¶ 8 Landrum clarified that a court may also look at the underlying facts of the charged crime rather than only the generally defined elements of the crime. Rather than limiting the search for a causal connection, Landrum instead broadened the test to include the underlying actual conduct. This accords with the legislature's broad imposition on offenders of responsibility for restitution. The statutory provision for joint and several responsibility demonstrates the legislature's intent: an individual's actual conduct does not determine the extent of his responsibility for restitution; instead, all acts which form the crime are imputed, for restitution purposes, to any participant.
*277 ¶ 9 Here, the relevant crime is defined as "intentionally tak[ing] or driv[ing] away any automobile or motor vehicle" without permission, or "voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that [it] was unlawfully taken." Former RCW 9A.56.070(1). Taking the vehicle is an act which is necessary to commit the crime and is thus imputed to a knowing and voluntary rider who is, by statute, equally guilty with the person taking or driving the vehicle. Id.
¶ 10 Under the restitution statute, then, the juvenile court's order is authorized if a causal connection exists between the crime as a whole and the property loss and damage. Petitioners deny that a sufficient causal connection exists between taking the vehicle and the loss of personal property in the vehicle when it was taken or damage caused by driving after they jumped from the car. They rely on two cases decided by the Court of Appeals, State v. Woods, 90 Wash.App. 904, 953 P.2d 834 (1998) and State v. Tetters, 81 Wash.App. 478, 914 P.2d 784 (1996). Woods was arrested for possession of a stolen vehicle one month after it was stolen. Tetters was arrested for possession of a stolen vehicle one week after the car was stolen. Neither was charged with the underlying theft, and there was no evidence to support such a charge. In both cases, the trial court ordered restitution for the loss of personal property located in the vehicle at the time it was stolen. On review, the Court of Appeals properly held in both cases that the defendant's subsequent possession of the stolen vehicle was not necessarily related to, or a but for cause of, the loss of the personal property in the vehicles.
¶ 11 Here, of course, petitioners are guilty of taking, rather than merely subsequently possessing, the automobile. But for the taking of the vehicle, the personal property would not have gone missing. The order of restitution for the lost personal property was therefore authorized by statute.
¶ 12 Similarly, but for the taking of the automobile without permission, the crash and resulting damage to the car and to the Les Schwab property would not have occurred. Petitioners do not deny the existence of a causal connection, but instead argue that McNulty's attempt to elude police pursuit was a superseding cause which effectively cut off their restitution responsibility. Without deciding whether principles of proximate cause or the superseding cause apply in the criminal restitution context, we note that an intervening act must be unforeseeable in order for it to break the causal chain. See Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468, 482, 951 P.2d 749 (1998). While there might be some set of factual circumstances which would break the causal chain, we cannot say that it was unforeseeable that a person guilty of taking a motor vehicle would steal personal property in the vehicle, attempt to elude the police, or cause an accident.

CONCLUSION
¶ 13 The legislature chose to make all participants responsible for the damages caused by their crime and not to limit responsibility to those damages which occur while individuals are actively participating. In doing so, it has used broad, but clear, language to ensure that victims are fully compensated. To read an implied limitation into the statute would leave victims undercompensated and thwart the will of the legislature. We decline to do so and accordingly affirm.
WE CONCUR: C. JOHNSON, BRIDGE, OWENS, FAIRHURST, J.M. JOHNSON, JJ.
SANDERS, J. (concurring in part, dissenting in part).
¶ 14 After petitioners in this case jumped out of the moving vehicle, David McNulty drove the car he stole north on 1st Avenue at speeds of 50 to 55 mph in a 40 mph zone, at one point veering into oncoming traffic. He then drove the car into the parking lot of a Les Schwab dealer, where he struck a curb with the vehicle and struck both a Les Schwab truck pulling into the lot and the Les Schwab building. But at a joint restitution hearing for the juveniles, the trial court imposed restitution jointly and severally in an amount of $6,962.08. This amount included: $4,527.85 payable to Farmers Insurance (the *278 insurer of the stolen vehicle); $1,494.23 payable to Les Schwab; and $940 payable to the vehicle owner, including $440 for reimbursement of compact discs (CDs) the owner claimed were missing from the vehicle and $500 for the owner's insurance deductible.
¶ 15 I would follow our prior case law and apply causation doctrines to restitution, just as we do in virtually every other area of the law. Because I would hold McNulty's reckless driving attempt to elude the police was an unforeseeable intervening cause of the damage to both the vehicle and Les Schwab's property, I would place the responsibility for paying restitution on the individual who actually caused the damage, and thus dissent.

Restitution for Accident Damages
¶ 16 The authority to impose restitution in a juvenile case is purely statutory. State v. Hunotte, 69 Wash.App. 670, 674, 851 P.2d 694 (1993). RCW 13.40.190 authorizes joint and several responsibility for restitution for all participants in the crime to which the damages can be causally connected:
the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent.... If the respondent participated in the crime with another person or other persons, all such participants shall be jointly and severally responsible for the payment of restitution.
RCW 13.40.190(1) (emphasis added).
¶ 17 We have already applied causation requirements to restitution. Restitution may be ordered only for losses incurred as a result of the precise offense charged. State v. Miszak, 69 Wash.App. 426, 428, 848 P.2d 1329 (1993). A restitution award must be based on a causal relationship between the offense charged and proved and the victim's losses or damages. State v. Johnson, 69 Wash.App. 189, 191, 847 P.2d 960 (1993). "If, but for the criminal acts of the defendant, the victim would not have suffered the damages for which restitution is sought, a sufficient causal connection exists." State v. Landrum, 66 Wash.App. 791, 799, 832 P.2d 1359 (1992) (emphasis added) (citing State v. Blair, 56 Wash.App. 209, 214-16, 783 P.2d 102 (1989)). "In determining whether a causal connection exists, we look to the underlying facts of the charged offense, not the name of the crime to which the defendant entered a plea." Id. (emphasis added) (citing State v. Harrington, 56 Wash.App. 176, 179-80, 782 P.2d 1101 (1989)).
¶ 18 The majority mischaracterizes these clear and direct holdings when it implies that no causal connection is required. Majority at 276. The majority does not even mention many of the cases cited above, choosing only to discuss the Landrum case. Landrum properly concluded that counseling expenses were a foreseeable result of fourth degree assault that included a sexual component. Landrum, 66 Wash.App. at 800, 832 P.2d 1359. But the Landrum court cited and relied upon extensive prior case law to conclude not that a court may look to the underlying facts of the offense charged, but rather that a court must look to such facts. See id. at 799-800, 832 P.2d 1359.
¶ 19 Here defendants pleaded guilty to taking a motor vehicle without permission (TMV). While the defendants did not actually take the vehicle, the TMV statute provided:
Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle whether propelled by steam, electricity, or internal combustion engine, the property of another, shall be deemed guilty of a felony, and every person voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or driving said automobile or motor vehicle and shall be deemed guilty of taking a motor vehicle without permission.
Former RCW 9A.56.070(1) (1975).
¶ 20 Whether there is even "but for" causation in the present case sufficient to support the imposition of restitution first depends on the interpretation of the TMV statute. While the TMV statute does impose equal guilt upon an individual who rides in a vehicle he knows was stolen as *279 upon the individual who himself stole the vehicle, the statute should be viewed as consisting of two separate ways to commit the crime of taking a motor vehicle. If the statute sets forth two ways to commit the charged crime, then Landrum and the cases cited therein require that "we look to the underlying facts of the charged offense, not the name of the crime to which the defendant entered a plea." Landrum, 66 Wash.App. at 799, 832 P.2d 1359. One cannot logically conclude that the damage to the vehicle and the Les Schwab truck and building were causally connected to defendants' riding in the vehicle.
¶ 21 The Court of Appeals did not view the statute in this manner. The court stated: "But for the taking of the motor vehicle without permission, none of the damage would have occurred." State v. Keigan C., 120 Wash.App. 604, 608, 86 P.3d 798 (2004). The court further concluded:
While it is true that the act making the passenger culpable is riding in the car, it is not the only act constituting the charged offense. The earlier taking of the car by someone else is also an underlying fact of the offense charged against the passenger. Because the taker and the rider are culpable of the same offense involving the same vehicle, logically the rider can be held liable for the same damages as the taker.
Id.
¶ 22 The majority adopts the Court of Appeals' construction. Majority at 276-77. But neither the majority nor the Court of Appeals cited authority for its construction of the TMV statute. The Court of Appeals' "logic" would appear to conflict with Landrum's requirement that the underlying facts of the criminal conduct be causally connected to the damage suffered by the victim. And if the TMV statute is viewed as containing multiple methods of committing the crime,[1] then the Court of Appeals' conclusions are tenuous at best.
¶ 23 While a vehicle must be taken for a rider to be charged with TMV, the rider  and the rider's conduct  is not the "cause" of the taking, and although as the Court of Appeals noted "the taker and the rider are culpable of the same offense involving the same vehicle," Keigan C., 120 Wash.App. at 608, 86 P.3d 798, such "culpability" is not a synonym for causality. The majority substitutes the term "guilty" for culpable, majority at 277, but the argument is identical. The fact that both the rider and the taker are "culpable" or "guilty" of the same offense does not mean the "underlying facts of the charged offense" are the same, and if different, then under Landrum only those underlying facts that are causally connected to a victim's loss can be the basis of restitution.[2]
¶ 24 The Court of Appeals has also held that "restitution cannot be imposed based on a defendant's `general scheme' or acts `connected with' the crime charged, when those acts are not part of the charge." State v. Dauenhauer, 103 Wash.App. 373, 378, 12 P.3d 661 (2000). While reckless driving and eluding a police officer may be "connected with" defendants' riding in the stolen vehicle, these acts were an independent, intervening cause of the car crash, and thus Dauenhauer bars imposition of restitution.

*280 Intervening Cause
¶ 25 Washington courts have not yet directly addressed whether an intervening cause can sever responsibility for damage incurred by a criminal act, thereby relieving a defendant of liability for restitution.[3] But our courts have held "[a] trial court may impose restitution if the damage or injury was a foreseeable consequence of the defendant's criminal acts." Landrum, 66 Wash.App. at 799, 832 P.2d 1359 (citing Harrington, 56 Wash.App. at 179, 782 P.2d 1101). Foreseeablility is the touchstone of intervening causation.
¶ 26 The doctrine of intervening cause (or "superseding cause," in the terminology of Washington Practice) is generally well established in Washington law. "Washington Courts have held that the standard for whether an intervening act will be considered a superseding cause, sufficient to relieve a defendant of liability, depends on whether the intervening act can reasonably be foreseen by the defendant."[4] 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 4.23, at 117 (2000) (citing Cramer v. Dep't of Highways, 73 Wash.App. 516, 870 P.2d 999 (1994)).
In determining whether an intervening act constitutes a superseding cause, the relevant considerations under Restatement (Second) of Torts § 442 (1965) are, inter alia, whether (1) the intervening act created a different type of harm than otherwise would have resulted from the actor's negligence; (2) the intervening act was extraordinary or resulted in extraordinary consequences; (3) the intervening act operated independently of any situation created by the actor's negligence.
Campbell v. ITE Imperial Corp., 107 Wash.2d 807, 812-13, 733 P.2d 969 (1987).
¶ 27 Here, McNulty's criminal acts of reckless driving and attempting to elude the police were not foreseeable consequences of the defendants' decision to ride in a stolen vehicle. The harm that could have resulted from riding in a stolen vehicle (or even "taking" the vehicle) is a different type of harm than the harm that results from reckless driving and eluding the police (a crash doesn't typically result from merely riding in a stolen vehicle); the intervening act was extraordinary (even most car thefts don't end in crashes after police chases); and the intervening act operated independently of any situation "created by" defendants' riding in the car. The intervening cause of McNulty's reckless driving attempt to elude the police breaks the chain of causation for Hiett and Freilinger and should relieve them of liability for restitution for the damages caused in the resultant accident.

Restitution for Missing Property
¶ 28 I concur in the majority's decision regarding the missing CDs. While defendants argue that there was no showing of *281 "but for" causation regarding the missing CDs, there is no indication of when the CDs went missing. The "Certification for Determination of Probable Cause" containing the facts to which defendants stipulated does not mention the CDs. McNulty denied that there were any CDs in the vehicle when he stole it.[5] The CDs could have gone missing during the roughly three hours when McNulty was in sole possession of the vehicle, but they could also have gone missing during the time the defendants were in the car. Defendants were not immediately apprehended and would presumably have had sufficient time to dispose of CDs, although the police report makes no mention of the defendants holding CDs or a container capable of holding CDs when they jumped from the moving car.
¶ 29 No intervening cause accounts for their loss. Since there is no way to determine when the CDs disappeared and since they could have disappeared when defendants were in the car, the known "underlying facts of the charged offense"[6] appear to support the imposition of restitution for the missing CDs.

Conclusion
¶ 30 While I agree with the majority that restitution may properly be imposed upon the petitioners for the missing property, I conclude the underlying facts of the defendants riding in the stolen vehicle do not support imposition of restitution for the accident damages. Further, liability for such damages was cut off by the intervening cause of McNulty's reckless driving while committing the separate crime of eluding the police, and on these points I must dissent.
MADSEN, J., and ALEXANDER, C.J., concur.
NOTES
[1] In accepting the deferred disposition, Hiett and Freilinger stipulated to the facts in the police report. Additionally, McNulty stated that he told them that the car was stolen before they began driving. Although they denied knowing the car was stolen, the punched ignition was lying on the floor of the back seat and a screwdriver was lying on the floor under the driver's seat.
[2] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[1] Many criminal statutes contain multiple methods of committing a single crime. See, e.g., RCW 9.35.020(1) (providing that the crime of identity theft may be committed by obtaining, possessing, using, or transferring a means of identification or financial information).
[2] The State has not cited any cases in which a rider convicted of TMV was held causally liable for restitution to damage to a vehicle after the rider had ceased riding in the vehicle, let alone after additional criminal acts were committed by the driver. In fact, the State has not cited any analogous cases in either its Court of Appeals brief or its supplemental brief before this court in support of its causation arguments. Restitution for damage to stolen vehicles has been awarded against a TMV "rider" when the damage occurred while the rider was in the car, State v. Barrett, 54 Wash.App. 178, 773 P.2d 420 (1989), and when multiple juveniles all drove a stolen vehicle and were in the car when it was wrecked, State v. Blair, 56 Wash.App. 209, 783 P.2d 102 (1989), and even when a victim chased a perpetrator and eventually crashed his car while trying to apprehend the criminal, State v. Hunotte, 69 Wash.App. 670, 851 P.2d 694 (1993), but restitution has not been awarded when the damages could not be traced to the act of riding in the vehicle or (as discussed below) when an intervening criminal act caused the damage.
[3] The Ninth Circuit has addressed intervening causation. The Ninth Circuit has not described its restitution jurisprudence as using a "mere `but for'" test because the Ninth Circuit recognizes that certain limited intervening causes can relieve a defendant of liability for restitution. United States v. Meksian, 170 F.3d 1260, 1263 (9th Cir.1999). It held "the main inquiry for causation in restitution cases becomes whether there was an intervening cause and, if so, whether this intervening cause was directly related to the offense conduct." Meksian, 170 F.3d at 1263. If the intervening cause still "directly relates" to the offense conduct, then restitution is still appropriate. If the intervening cause does not "directly relate" to the offense (another way of saying it is truly an intervening cause), then restitution is not appropriate.
[4] While foreseeability is the touchstone of intervening causation, the State says that foreseeability analysis has no place in restitution context, citing State v. Enstone, 137 Wash.2d 675, 677, 974 P.2d 828 (1999). But when Enstone concluded that "a finding of foreseeability is not a necessary element for a restitution order" it did so in the context of refuting a claim that the direct result of a criminal act must be "foreseeable" in order to impose restitution. This comports with Washington's "but for" causation standard for restitution. If one pushes a person who falls, one need not foresee that the victim had a million dollar china doll in the victim's pocket to be liable in restitution for the entire amount of the damages. This concept also has a tort law equivalent: the "eggshell skull" rule. See, e.g., Gibson v. County of Washoe, 290 F.3d 1175, 1192 (9th Cir.2002). But if one pushes another and while falling that person is shot by a third party, you should not be liable for restitution for the damages caused by the gunshot wound.
[5] The car owner also claimed that there was $4,000 cash in the car, however the trial court judge did not find this credible and did not allow restitution for this claim.
[6] Landrum, 66 Wash.App. at 799, 832 P.2d 1359.