FILED
United States Court of Appeals
Tenth Circuit

November 9, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DERRICK WILLIAM CALDWELL,

      Defendant-Appellant.

No. 08-3011

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:07-CR-20031-JWL-1)**

G. Gordon Atcheson of The Atcheson Law Office, Westwood, Kansas, for
Defendant-Appellant.

Leon Patton, Assistant United States Attorney (Marietta Parker, Acting United
States Attorney, with him on the brief), Office of the United States Attorney for
the District of Kansas, Kansas City, Kansas, for Plaintiff-Appellee.

Before **LUCERO, EBEL**, and **TYMKOVICH**, Circuit Judges.

**EBEL**, Circuit Judge.

     Defendant-Appellant Derrick Caldwell pled guilty to one count each of
distributing cocaine, distributing cocaine base, and possessing with intent to
distribute cocaine base, and was sentenced to 121 months' imprisonment.

Following the passage of Amendment 706 to the Sentencing Guidelines, the district court reduced Mr. Caldwell's sentence by twenty-one months.

On appeal, Mr. Caldwell raises three challenges to his sentence. First, he challenges the district court's reliance on uncharged "relevant conduct" to substantially increase his sentence. Second, he argues that the district court wrongly calculated his criminal history category. Finally, he argues that the district court erred by refusing to reduce his sentence in light of the crack/powder sentencing disparities.

We reject all but part of one of Mr. Caldwell's challenges. Specifically, we agree with one of Mr. Caldwell's challenges to the district court's calculation of his criminal history category. Accordingly, exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM in part, REVERSE in part, and REMAND this case for resentencing.

## I. Background

The United States indicted Mr. Caldwell for one count of distributing cocaine, one count of distributing cocaine base, and one count of possession with intent to distribute cocaine base, all in violation of 21 U.S.C. § 841(a)(1).[1] Mr.

---

[1] 21 U.S.C. § 841(a)(1) makes it illegal "to manufacture, distribute, or dispense, or possess with intent to manufacture distribute, or dispense, a controlled substance." The third count of the indictment also alleged a violation of 18 U.S.C. § 2, which provides,

(a) Whoever commits an offense against the United States or aids, abets,

(continued...)

Mr. Caldwell pled guilty to all three counts without entering into a plea

agreement with the government. He further admitted the details of these offenses,

which his lawyer described as follows:

> (1) selling 1.54 grams of powdered cocaine to an undercover police officer in Parsons, Kansas[, ] on April 3, 2002; (2) selling 4.01 grams of crack to the same undercover officer the next day; and (3) possessing 2.2 grams of crack and 9.6 grams of marijuana on May 23, 2005[,] when he was arrested with his wife in a guest room at a Parsons hotel.

(ROA Vol. I, Doc. 33, at 1.)

The government put on evidence that Mr. Caldwell had also engaged in

substantial additional illegal conduct. The government submitted numerous

reports from interviews with confidential informants who attested to Mr.

Caldwell's long-term purchases and sales of illegal drugs. The court also heard

live testimony from two of the informants and a police officer who had been

involved in interviewing some of the informants. One informant, Antwon

McPherson, testified that he saw Mr. Caldwell purchasing drugs on at least one

occasion in 1998, and that he personally sold between a half ounce and two

ounces to Mr. Caldwell on seven to ten occasions during the following year and a

---

[1](...continued)
counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

half. The other informant, Dominic Zales, testified that he saw Mr. Caldwell producing an ounce of crack on three different occasions in 2007. Mr. Zales stated that Mr. Caldwell would then give the crack to other people who sold the crack to Zales and others. Detective Scott Gofourth of the Parsons Police Department testified about conversations he had with the other two witnesses testifying that day, Mr. Zales and Mr. McPherson, as well as conversations he had with two other informants, Mr. Lyons and Mr. Robinson. Detective Gofourth indicated that Mr. Robinson had described Mr. Caldwell as his "main supplier" of powder cocaine in 2005, and that Mr. Lyons stated that he bought between one gram and one-eighth of an ounce of crack from Mr. Caldwell every two to three weeks during 2003 and 2004.

The district court sentenced Mr. Caldwell to 121 months' imprisonment, to be followed by six years' supervised release. The court began its sentencing determination by calculating Mr. Caldwell's base offense level under the Guidelines. Mr. Caldwell admitted to conduct involving 6.21 grams of crack, 1.54 grams of powder cocaine, and 9.64 grams of marijuana. The court attributed an additional eighty-five grams of crack to Mr. Caldwell based on Mr. Zales's testimony, for a total of 91.21 grams of crack. Because different drugs were involved, the court converted them all to their marijuana equivalencies. The base offense level for 91.21 grams of crack is thirty, see U.S.S.G. § 2D1.1, so the marijuana equivalency for the crack in this case is fourteen kilograms per gram,

for a total of 1276.94 kilograms of marijuana.  The court then converted the 1.54

grams of powder cocaine into its marijuana equivalent of 308 kilograms, reaching

a total of 1,584.94 kilograms of marijuana.[2]   The base offense level for 1,584.94

kilograms of marijuana is thirty-two.  U.S.S.G. § 2D1.1(a)(3), (c)(4), cmt.

n.10(D). The district court subtracted three points for acceptance of

responsibility, for a final offense level of twenty-nine.

The district court then determined that Mr. Caldwell's criminal history

category was IV.  The Guidelines range for an offense level of twenty-nine and a

criminal history category of IV is 121-151 months.  After considering the issue of

crack/powder sentencing disparities and the factors listed in 18 U.S.C. § 3553(a),

the district court sentenced Mr. Caldwell to 121 months, the low end of the

Guidelines range.  This timely appeal followed.[3]

## II.  Analysis

A.   *The District Court Appropriately Increased Mr. Caldwell's Sentence Based on Relevant Conduct not Included in the Indictment*

"We review the district court's factual finding supporting a determination

of relevant conduct for clear error but review the ultimate determination of

---

[2] The district court did not include the additional 9.6 grams of marijuana found on Mr. Caldwell in 2005, but that would not have affected his sentence. See U.S.S.G. § 2D1.1.

[3] Following the passage of Amendment 706, the district court reduced Mr. Caldwell's sentence by twenty-one months.  Neither party has appealed that decision.

relevant conduct de novo." United States v. Tran, 285 F.3d 934, 938 (10th Cir. 2002); see also United States v. Osborne, 332 F.3d 1307, 1311 (10th Cir. 2003) ("We review the district court's factual findings to determine whether there was clear error, and we review the ultimate determination of relevant conduct de novo."). In this case, the district court did not clearly err in finding that, in addition to the conduct charged in the indictment, Mr. Caldwell had produced three ounces of crack cocaine. Further, we agree with the district court's conclusion that Mr. Caldwell's production of three ounces of crack qualified as relevant conduct that could be used to enhance his sentence.

1.      The District Court Appropriately Relied on an Informant's Testimony to Find that Mr. Caldwell had Produced Three Ounces of Crack

Dominic Zales testified that he saw Mr. Caldwell producing an ounce of crack in a beaker on three different occasions. Upon further questioning about the amount he witnessed Mr. Caldwell produce, he stated, "You can't cook no more than an ounce in a beaker." (ROA Vol. II at 28) The government's attorney followed-up on that statement asking, "And so would it be an ounce or less than an ounce?" (Id.) Mr. Zales responded, "[a]n ounce." (Id.) The district court reasonably interpreted Mr. Zales's testimony to mean that Mr. Zales had seen Mr. Caldwell produce an ounce of crack on three separate occasions, for a total of just over eighty-five grams. Further, the district court found Mr. Zales's testimony to be credible, and we defer to the district court's credibility determination at

sentencing. See United States. v. McKneely, 69 F.3d 1067, 1078 (10th Cir. 1995) ("[I]n sentencing proceedings we defer to the district court's evaluation of witness credibility."). Therefore, the district court did not clearly err in finding that Mr. Caldwell had produced three ounces of crack.

      2.     <u>Mr. Caldwell's Production of Three Ounces of Crack was Sufficiently Related to his Conduct of Conviction to Qualify as Relevant Conduct Under the Sentencing Guidelines</u>

The Sentencing Guidelines provide that the court should take into account all activities that form part of the "same course of conduct or common scheme or plan as the offense of conviction," U.S.S.G. § 1B1.3(a)(2), even if the defendant was never charged with that additional conduct and the jury never found him guilty of it. "Offenses may qualify as part of the same course of conduct 'if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.'" United States v. Williams, 292 F.3d 681, 685 (10th Cir. 2002) (quoting U.S.S.G. § 1B1.3 cmt. n.9(B)); see also United States v. Svacina, 137 F.3d 1179, 1182-83 (10th Cir. 1998) ("This court has agreed with the Second Circuit['s] distinction between the terms 'same course of conduct' and 'common scheme or plan.' While a 'common scheme or plan' may require some connection between the acts by common participants, purpose, or overall scheme, the analysis of 'same course of conduct' focuses on whether there is a pattern of criminal conduct.") (quotation omitted).

This court has stated that, when determining whether certain activity qualifies as relevant conduct under the Guidelines, "[s]imilarity, regularity, and temporal proximity are the significant elements to be evaluated." United States v. Roederer, 11 F.3d 973, 979-80 (10th Cir. 1993); see also Svacina, 137 F.3d at 1182-83; U.S.S.G. § 1B1.3 cmt. n.9(B) ("Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."). Applying those three factors to this case leads us to conclude that Mr. Caldwell's production of three ounces of crack qualified as relevant conduct under the guidelines.

a. Temporal Proximity

Mr. Caldwell was convicted of selling small amounts of drugs on three occasions: April 3, 2002, April 4, 2002, and May 23, 2005. Mr. Zales testified that Mr. Caldwell produced three ounces of crack in late 2006 or early 2007, about a year and a half after the conduct of conviction.[4]

Mr. Caldwell's production of three ounces of crack was fairly remote from his conduct of conviction. However, this court has found that conduct occurring as much as seventeen months before the conduct of conviction could be proximate

_____

[4]Mr. Caldwell wrongly asserts in his brief on appeal that the relevant conduct occurred in late 2005 or early 2006, which would considerably reduce the gap in time between the conduct of conviction and the relevant conduct.

- 8 -

enough to justify its classification as relevant conduct under the guidelines. See United States v. Richards, 27 F.3d 465, 468-69 (10th Cir. 1994). In Richards, this court found that the district court did not plainly err in concluding that heroin purchased from the defendant seventeen months before the offense of conviction qualified as relevant conduct under the Guidelines. The court noted that, although the relevant conduct took place a while before the conduct of conviction, the earlier sales involved a very regular course of conduct relating to the same drug, so his later sales qualified as relevant conduct. Id.; see also Roederer, 11 F.3d at 979-80 (holding that conduct occurring approximately five years before the offense of conviction constituted relevant conduct where the conduct was very similar and there was evidence that the defendant had engaged in additional similar conduct in the time between these offenses). But cf. United States v. Culverhouse, 507 F.3d 888, 895-96 (5th Cir. 2007) (holding that "temporal proximity was lacking" where the additional conduct took place three years before the offense of conviction).

Further, although Mr. Caldwell's production of three ounces of crack was fairly remote from his conduct of conviction, where, as here, the offenses of conviction took place over a long period of time, the court is willing to extend the time frame for what qualifies as relevant conduct. Mr. Caldwell's offenses of conviction spanned more than three years. In that context, his additional conduct a year and a half later is not very remote from his conduct of conviction. Further,

the similarity of these offenses helps overcome any weakness in the temporal connection between these events.  Cf. United States v. Phillips, 516 F.3d 479, 484-85 (6th Cir. 2008) (holding that defendant's possession of firearms in 2002 and 2006 could be used to enhance a sentence based on his conviction for possession of a firearm in 2004 "because there is substantial similarity between the offending incidents and because [the defendant] indicated that he carried firearms regularly"); United States v. Pauley, 289 F.3d 254, 259 (4th Cir. 2002), (noting that an offense occurring more than six months before the offense of conviction is "somewhat remote," but concluding that the offenses were very regular and extremely similar, so they could still constitute relevant conduct), modified on other grounds by 304 F.3d 335 (4th Cir. 2002); see generally United States v. Hill, 79 F.3d 1477, 1484 (6th Cir. 1996) (noting that in making determinations of whether conduct is "relevant," courts have applied "a sliding scale approach, i.e., where one of the factors is weak or absent, there must be a substantially stronger showing of at least one other factor").

b. Regularity

Mr. Caldwell's conduct of conviction was not very regular.  He sold drugs to an undercover officer on two separate occasions in April 2002, and was found with drugs he intended to sell in May 2005.  However, the government also presented evidence from informants indicating that Mr. Caldwell regularly sold drugs from 2002-2005.  Although the district court did not ultimately rely on this

- 10 -

evidence to increase the amount of drugs attributed to Mr. Caldwell, and even expressed some reservations about its credibility, this evidence supports the district court's finding that "Mr. Caldwell was a professional drug dealer for a long period of time." (ROA Vol. II at 122; see also id. at 121-22 ("I am persuaded that Mr. Caldwell has been, and would be, if free today, . . . a professional drug trafficker.").) This factual finding, which is amply supported by evidence in the record, inevitably implies that Mr. Caldwell regularly engaged in conduct that was similar to the conduct of conviction, and provides strong support for the court's conclusion that Mr. Caldwell's later offenses qualified as relevant conduct. Cf. Roederer, 11 F.3d at 979-80 (affirming district court's holding that defendant's "1980-87 conspiracy was a part of the same course of conduct as [his] 1992 distribution" in part because "the evidence, when viewed in its entirety, establishes that [the defendant] was actively engaged in the same type of criminal activity, distribution of cocaine, from the 1980s through May, 1992"). Further, Mr. Caldwell's three offenses of conviction, combined with his three instances of producing an ounce of crack, would be sufficient, on their own, to establish at least some level of regularity. See Svacina 137 F.3d at 1183 ("A comparison of the dismissed count with the count of conviction also shows that some regularity of conduct exists–the minimum requirement of two instances of conduct."). But see Hill, 79 F.3d at 1484 (concluding that "regularity [wa]s completely absent" because the defendant only engaged in two incidents). The

district court's finding that, in addition to his conduct of conviction, Mr. Caldwell regularly engaged in selling drugs strongly supports its conclusion that Mr. Caldwell's production of three ounces of crack in late 2006 or early 2007 was part of the "same course of conduct" as his conduct of conviction.  See United States v. Stephenson, 557 F.3d 449, 456-57 (7th Cir. 2009) (holding that defendant's admission that he had purchased a kilogram of crack "during the course of his employ as a crack cocaine dealer in Evanston from 1996 to 2003" constituted an admission of relevant conduct related to his conviction for selling crack in 2001 in part because "the evidence demonstrated that Stephenson's drug trafficking was more or less steady over the period of time in question, showing a continuous pattern of drug trafficking").

### c.  Similarity

Mr. Caldwell's conduct of conviction was substantially similar to the relevant conduct the district court attributed to him.  Like his conduct of conviction, the relevant conduct in this case involved crack cocaine.  See Richards, 27 F.3d at 468 (holding that prior offenses qualified as relevant conduct in part because they involved "sales of the same drug").  Further, Mr. Caldwell's wife, Tiana Edwards, was present during the final offense of conviction as well as the relevant conduct.  Cf. Pauley, 289 F.3d at 259 (stating that the similarity of the offenses was the most important factor supporting the court's conclusion regarding relevant conduct, and basing its finding of similarity at least in part on

the fact that "[e]ach of the [offenses] involved [the same accomplices]").  Finally, all three instances of Mr. Caldwell's conduct of conviction and all three instances of his relevant conduct took place in the same city in Kansas.  See United States v. Gilbert, 173 F.3d 974, 978 (4th Cir. 1999) (holding that defendant's sale of cocaine in 1993 and 1994 qualified as relevant conduct that could increase his sentence for selling cocaine in 1996 in part because all of those sales took place in the same location).

To be sure, there were also some differences between Mr. Caldwell's conduct of conviction and his relevant conduct.  For example, Mr. Caldwell's role in the conduct of conviction (distributor) differed from his role in the relevant conduct (producer).  Further, the amount involved in the relevant conduct was greater than the amount involved in the conduct of conviction.  However, the fact that Mr. Caldwell had moved up the ranks from small-time distributor to mid-level producer does not mean that his production of crack in late 2006 or early 2007 was unrelated to his sales of crack in 2002 and 2005.  These differences do not undercut the substantial similarities between his conduct of conviction and his additional relevant conduct.

3.  Conclusion

We conclude that the district court did not clearly err in determining that Mr. Caldwell had, in fact, produced an additional three ounces of crack.  Further, we agree with the district court's conclusion that this qualified as relevant

- 13 -

conduct under the Guidelines. Accordingly, we affirm this portion of the district court's decision.

B.   *The District Court Erred in Calculating Mr. Caldwell's Criminal History Category*

The PSR initially calculated Mr. Caldwell's criminal history points at six, for a criminal history category of III. Both the government and Mr. Caldwell objected to that recommendation. The district court denied Mr. Caldwell's objections and granted the government's objection, adding two points to Mr. Caldwell's criminal history. Mr. Caldwell's eight criminal history points qualified him for a criminal history category of IV.

On appeal, Mr. Caldwell argues that the district court wrongly attributed three criminal history points to him based on his 2002 conviction for driving while a habitual violator, and that the district court wrongly attributed two points to him based on two 1995 convictions. Reviewing the "district court's legal interpretations of the Sentencing Guidelines de novo" and its factual findings that form the basis for its calculation of Mr. Caldwell's criminal history category for clear error, see United States v. Moore, 130 F.3d 1414, 1416 (10th Cir. 1997), we hold that, although most of the district court's calculations of Mr. Caldwell's criminal history points were correct, the court erred in attributing two points to Mr. Caldwell for committing one of the offenses of conviction while serving under a criminal justice sentence. Mr. Caldwell should, therefore, have been

given a criminal history category of III, not IV. Accordingly, we reverse and remand this case for resentencing.

      1.    <u>The District Court Should Only Have Attributed One Criminal History Point to Mr. Caldwell Based on his 2002 Conviction for Driving While a Habitual Offender</u>

Mr. Caldwell admits that he was convicted of driving while a habitual offender in Kansas state court in 2002 after being caught driving with a suspended license three times in five years. For that offense, he was initially sentenced to twelve months' probation and thirty days in jail. However, he was given the option of paying a $1500 fine in lieu of serving those thirty days. He apparently paid a portion of that fine at some point but, after failing to pay the balance of the fine, he served five of his thirty-day sentence in March 2006.

The district court appropriately attributed one criminal history point to Mr. Caldwell for this conviction. Under U.S.S.G. § 4A1.2(c)(1), an offense like driving with a suspended license qualifies for a criminal history point only if "the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days." To constitute a "term of imprisonment of at least thirty days," the defendant must actually serve some portion of that sentence. See U.S.S.G. § 4A1.2, cmt. n.2. In this case, Mr. Caldwell was initially allowed to pay a fine instead of actually serving any of that time. Therefore, his sentence of twelve months' probation and thirty days' imprisonment did not initially qualify to earn him a criminal history point. However, after he failed to pay the balance

of the fine, he was placed in jail for five days.  Because he actually served a portion of his thirty-day sentence, Mr. Caldwell was assessed a criminal history point for that offense.

However, the district court erred by adding two additional points to Mr. Caldwell's criminal history based on this offense.  The district court determined that Mr. Caldwell qualified for a two-point increase pursuant to U.S.S.G. §4A1.1(d), which provides that the court should "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation . . ." (emphasis added).  A "criminal justice sentence" is defined as any sentence that would qualify for a criminal history point under §4A1.2(c), see U.S.S.G. §4A1.1, cmt. n.4, which, as described above, includes within its purview any sentence of more than twelve months' probation or thirty days' imprisonment, provided that at least a portion of that term of imprisonment is actually served.

The application of the relevant Guidelines provisions in this case presents a question of first impression before this court.  Mr. Caldwell acknowledges that he was under probation for driving while a habitual offender when he committed his 2005 offense.[5]  However, at the time of that offense, he had not yet served any

---

[5] We note that we are a bit perplexed by this admission.  According to the PSR, Mr. Caldwell was sentenced to twelve months' probation for driving while a habitual offender in late 2002, and he did not commit the third offense of conviction until May 2005.  Thus, it is not entirely clear how he could have been serving his probation at that time.  However, the factual record on this issue is generally unclear, and we are not in a position to second-guess Mr. Caldwell on

(continued...)

portion of his thirty-day sentence. Thus, when he committed the 2005 offense, the probationary term he was then serving did not yet qualify as part of a "criminal justice sentence" under §4A1.1(d). The question of first impression before this court is, therefore, whether a defendant's criminal history category can be increased for committing an offense while serving under a "criminal justice sentence" where the probationary term he was serving at the time of the offense only later qualified as a "criminal justice sentence" due to events that took place after the defendant committed the offense of conviction.

We hold that, in these circumstances, it was error to add these two points to Mr. Caldwell's criminal history. The plain language of §4A1.1(d) is limited to offenses committed "while under any criminal justice sentence . . ." (emphasis added). In this case, Mr. Caldwell was not "under" a "criminal justice sentence" at the time he committed any of the conduct of conviction. We cannot ignore the plain language of that provision. See United States v. Dell, 359 F.3d 1347, 1349 (10th Cir. 2004) ("We find the plain language of the sentencing guidelines and the accompanying commentary to be dispositive."). Accordingly, we affirm the district court's decision to grant Mr. Caldwell a one-point increase for his prior conviction, but reverse the district court's decision to add two additional points to his criminal history for committing his offense while under a "criminal justice

---

[5](...continued)
the facts of this case.

sentence." Because a two-point reduction would move Mr. Caldwell from criminal history category IV to category III, we must remand this case for resentencing in light of this error.

       2.    <u>The District Court did not Err by Adding Two Points Based on Mr. Caldwell's 1995 Convictions</u>

Mr. Caldwell argues that the court should not have considered two convictions from 1995 when calculating his criminal history because those convictions occurred more than ten years before the date of his conviction in this case. Mr. Caldwell's argument on this point completely lacks merit. The Guidelines state that any sentence for a term of imprisonment less than thirteen months that was imposed "within ten years of the defendant's commencement of the instant offense is counted." U.S.S.G. § 4A1.2(e)(2). The Guidelines do not mention the timing of the prosecution; rather, they focus on the timing of the offense. As Mr. Caldwell acknowledges, there is no dispute that, under the terms of the guidelines, Mr. Caldwell's prior offenses count under this provision. Mr. Caldwell fails to present any good reason for this court to ignore the Guidelines' plain wording in this case.

C.    *The District Court did not Abuse its Discretion by Refusing to Reduce Mr. Caldwell's Sentence to Eliminate the Disparity Between Sentences Involving Powder and Crack Cocaine*

Mr. Caldwell argues that the Supreme Court's decision in <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007) dictates that the district court should have

reduced his sentence to eliminate the crack/powder sentencing disparities. As a preliminary matter, the parties dispute whether Mr. Caldwell adequately raised this issue below and, accordingly, whether we review for plain error or for an abuse of discretion. We decline to reach that issue because, even under the less deferential abuse-of-discretion standard, we would affirm the district court's decision in this case.

The district court explicitly acknowledged that "Kimbrough would permit [the court] to vary" from Mr. Caldwell's Guidelines range in light of the crack/powder sentencing disparities, but concluded that a variance was not "warranted under all the facts and circumstances here." (App. Vol. II at 122.) Nothing in Kimbrough mandates that a district court reduce a defendant's sentence in order to eliminate the crack/powder sentencing disparities. See United States v. Trotter, 518 F.3d 773, 774 (10th Cir. 2008) (remanding, in light of Kimbrough, the district court's sentencing decision in a case involving crack where district court had refused to vary from the Guidelines range, but noting that, if the district court had initially refused to reduce defendant's sentence "based on its conclusion that the crack/powder disparity did not warrant a below-Guidelines sentence in Defendant's particular case," the decision would be entirely permissible under Kimbrough) (emphasis added). In this case, the court acknowledged that it had the authority to vary from the Guidelines to reduce the crack/powder sentencing disparities, but declined to reduce Mr. Caldwell's

sentence based on the facts of this particular case. Mr. Caldwell has failed to show how the district court's decision constituted an abuse of discretion. Accordingly, we affirm this portion of the district court's decision.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision in part, REVERSE in part, and REMAND for resentencing in light of the district court's miscalculation of Mr. Caldwell's criminal history category.