**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RICHARD M. ARNOLD SR.,

    Defendant - Appellant.

No. 16-6152
(D.C. No. 5:14-CR-00347-D-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

Richard Arnold Sr. appeals the district court's restitution award arising from a scheme involving vehicle-financing rebates. Arnold argues that the district court erred in awarding restitution to certain lenders and in calculating the amount of restitution owed. Finding no reversible error, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

## I

Arnold pleaded guilty to one count each of wire fraud and conspiracy to commit wire fraud. *See* 18 U.S.C. §§ 1343, 1349. According to the indictment, Arnold—along with his wife Robyn and his sons Ricky and Robert (collectively, the Arnolds)—concocted a scheme to defraud individuals out of the financing-incentive rebates those individuals received when they purchased new vehicles. Specifically, the Arnolds represented to their victims that if they relinquished their rebates to the Arnolds, a charitable trust would then pay off their car loans. But while the Arnolds made some payments on the loans, they eventually stopped making payments and instead used the remaining rebate funds for their own personal expenses. Eventually, the individual victims either took over the loan payments or relinquished the vehicles to the lenders. The lenders then resold the vehicles for less than the remaining balance on each loan.

After sentencing, the district court ordered Arnold to pay restitution to, inter alia, those lenders who repossessed vehicles and resold them at deficiencies. This included both so-called "captive" lenders, Aplt. Br. 11—i.e, financing units owned and operated by the automobile companies—and their successors—i.e., lenders that assumed the financial interests of the original lenders. While not entirely clear from either the record or the parties' briefing, it appears that the district court calculated the restitution due to the captive lenders as the amount of principal remaining on the loans after the repossession and sale of the vehicles.

The district court ultimately ordered Arnold to pay $280,075.15 in restitution. Arnold appeals.

## II

On appeal, Arnold argues that the district court erred in (1) finding that the captive and successor lenders were victims entitled to mandatory restitution under the Mandatory Victims Restitution Act (MVRA) of 1996, 18 U.S.C. § 3663A, and (2) failing to credit Arnold with interest that he paid prior to repossession and resale of the vehicles. In evaluating these arguments, we review the district court's application of the MVRA de novo and its factual findings for clear error. *See United States v. Shengyang Zhou*, 717 F.3d 1139, 1152 (10th Cir. 2013).

## A

Arnold first argues the district court erred when it concluded that the captive lenders constitute victims for purposes of the MVRA.

The MVRA defines the term "victim" to mean, in relevant part, "a person directly and proximately harmed as a result of the commission of an offense." § 3663A(a)(2). A victim is "proximately harmed as a result of" a defendant's crime, *id.*, "if either there are no intervening causes, or, if there are any such causes, [they] are directly related to the defendant's offense," *United States v. Speakman*, 594 F.3d 1165, 1172 (10th Cir. 2010).

Arnold argues that the government failed to meet its burden to show that he "was the proximate cause of the losses claimed by the [captive] lenders" because the government failed to prove that the employees of the captive lenders—and therefore

3

the captive lenders themselves—weren't involved in the Arnolds' fraudulent scheme. Aplt. Br. 9.

For this proposition, Arnold relies on *Speakman*, 594 F.3d 1165. There, Merrill Lynch financial consultant Larry Speakman illegally transferred money from the Merrill Lynch account of his wife, Carolyn Speakman. *Id.* at 1166-67. Unrelated to the criminal case the government subsequently brought against Larry, Carolyn also initiated an arbitration suit against Merrill Lynch. *Id.* at 1168. The arbitration panel found some liability on Merrill Lynch's part and, as a result, ordered it to pay Carolyn $1,225,000. *Id.*

Larry ultimately pleaded guilty to wire fraud, and the district court ordered him to pay $1,225,000 in restitution to Merrill Lynch, finding that Merrill Lynch was a "victim" under the MVRA. *Id.* at 1168, 1170. The district court based this decision on the facts contained in Larry's presentence investigation report, which explained the amount of—but not the basis for—Merrill Lynch's liability to Carolyn. *Id.* at 1168.

On appeal, we reversed and remanded for the district court to determine the basis for the arbitration panel's finding of Merrill Lynch's liability. *Id.* at 1172-73. In doing so, we noted that Merrill Lynch was only a "victim" of Larry's fraud under the MVRA if, inter alia, Larry's fraud proximately caused Merrill Lynch's loss. *See id.* at 1171. And we explained that intervening causes break the chain of proximate cause unless they are directly related to the offensive conduct. *See id.* at 1172. Finally, we determined that two such potential intervening causes existed. *Id.*

4

First, Carolyn's initiation of the arbitration action was an intervening cause of Merrill Lynch's harm. But because the initiation of that action was directly related to Larry's fraud, we held that it didn't break the chain of causation for purposes of determining whether Merrill Lynch was a victim. *Id.*

Second, we noted that Merrill Lynch's own wrongdoing, if any, might constitute an intervening cause. *See id.* at 1172. And we reasoned that if the basis of Merrill Lynch's liability to Carolyn was its own intentional acts, those acts would indeed break the chain of causation between Larry's fraud and Merrill Lynch's loss. *See id.* at 1173-74. But that wouldn't be the case if the basis of Merrill Lynch's liability to Carolyn instead sounded in respondeat superior or negligence. *Id.* at 1173. Thus, we remanded for the district court to determine whether Merrill Lynch's liability to Carolyn was based on respondeat superior, its own negligence, or its own intentional involvement in Larry's fraud. *Id.* at 1172-74.

Here, Arnold argues that the government failed to show by a preponderance of the evidence that he proximately caused harm to the captive lenders because the government didn't show that the captive lenders weren't complicit in the Arnolds' fraud. Arnold suggests that *Speakman* requires as much. In other words, he suggests that *Speakman* required the government to disprove the existence of any possible intervening causes in order to satisfy its burden of showing that the captive lenders in this case are victims under the MVRA.

We disagree. In *Speakman*, the arbitration award constituted evidence that at least arguably suggested an intervening cause may have broken the chain of

5

proximate causation. *See* 594 F.3d at 1172-73. Thus, *Speakman* doesn't stand for the proposition that the government must disprove any and all potential intervening causes before the district court can characterize an entity as a victim under the MVRA. Instead, *Speakman* merely establishes that the government must address potential intervening causes when at least some evidence suggests those intervening causes might break the chain of proximate causation.

Arnold points to no such evidence here. That is, he doesn't identify any evidence that would even hint that the captive lenders or their employees intentionally participated in Arnold's fraud. And in the absence of such evidence, the district court didn't err in finding that the captive lenders and their successors were victims—even though the government didn't disprove the possibility of their involvement in Arnold's fraud.

Finally, in passing, Arnold cites *United States v. Washington*, 634 F.3d 1180 (10th Cir. 2011), and asserts that the government failed to prove that "successor lenders were a standard practice within the automobile sales and distribution system." Aplt. Br. 14. But Arnold provides no context, argument, or explanation for this assertion. Accordingly, any argument that Arnold might be attempting to advance here is inadequately briefed, and we decline to consider it. *See* Fed. R. App. P. 28(a)(8)(A) (requiring argument section of appellant's brief to contain "appellant's contentions and the reasons for them"); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (explaining that court routinely declines to consider inadequately briefed arguments).

**B**

Next, Arnold challenges the district court's method of calculating restitution.

At the outset, we note that Arnold makes no effort to explain how, precisely, the district court actually determined the amount of restitution owed to each lender. Nor is the district court's method entirely clear from its restitution order. True, that order notes that the amount of restitution owed is the amount of the loan deficiency remaining after the lenders applied any proceeds from the sale of each repossessed vehicle. But the order doesn't specify whether the final amount owed consists solely of the remaining undischarged principal after subtracting the sale proceeds from the principal due, or whether it instead includes other components, such as additional accumulated interest. Based on our review of the record, however, it appears that the amount the district court ultimately relied on in imposing restitution was simply the outstanding principal remaining on the loans after the lenders resold each vehicle and applied the proceeds. That is, while the lenders' records do note additional accumulated interest, it doesn't appear that the district court added that amount to the remaining principal after applying the resale proceeds.

Arnold suggests that the district court erred in simply subtracting the sale proceeds from the remaining principal balance on each loan. Instead, he appears to assert, the district court should have also subtracted from the remaining principal balance any interest paid prior to repossession. Failure to do so, Arnold complains, "would allow [each] lender to collect the interest twice." Aplt. Br. 16.

Arnold makes no attempt to explain how the district court's failure to subtract

7

from the principal balance any interest paid over the life of each loan would allow the lenders to "collect . . . interest twice." *Id.* Instead, as we see it, Arnold's proposed method of calculating restitution—i.e., his suggestion that the district court should have subtracted from the principal balance owed the amount of interest already paid—would deprive the lenders of the opportunity to collect interest at all.

We decline to adopt this approach. First, Arnold cites no authority suggesting that the lenders aren't entitled to interest under the MVRA. We could reject his argument on this basis alone. *See* Fed. R. App. P. 28(a)(8)(A); *Bronson*, 500 F.3d at 1104.

Second, as the government points out, our cases indicate that the lenders are entitled to interest as a component of restitution. *Cf. United States v. Williams*, 292 F.3d 681, 687, 689 (10th Cir. 2002) ("The car was not sold at auction until July 9, 1997. Accrued interest at the contract rate of 9.5 percent during the intervening time period as well as credit union expenses and fees incurred in the repossession and sale of the Jaguar reasonably account for [amount of restitution that district court imposed under MVRA]."); *United States v. Patty*, 992 F.2d 1045, 1050 (10th Cir 1993) (approving prejudgment interest as a component of restitution under Victim Witness Protection Act because it reflects victim's "inability to use the money for a productive purpose, and is therefore necessary to make the victim whole"— particularly when "victim is a financial institution"). Thus, we reject Arnold's assertion that the restitution order somehow overcompensates the lender-victims by failing to subtract from the restitution owed any interest those lenders previously

8

collected.

As a final matter, Arnold complains that "some of the claims" for which the district court imposed restitution also "included costs associated with repossession and processing." Aplt. Br. 16. But because the argument section of his brief doesn't contain any citations to the record that might support this factual assertion, Arnold has waived any challenge to the district court's alleged inclusion of such costs. *See* Fed. R. App. P. 28(a)(8)(A); *Bronson*, 500 F.3d at 1104.

\* \* \*

Arnold fails to demonstrate that the district court erred in (1) concluding that the captive lenders and their successors constitute "victims" for purposes of the MVRA or (2) calculating the amount of restitution owed. Accordingly, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge

9