**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>          v.<br><br>SEAN ROBERT HIGGINS,<br><br>          Appellant. | No. 88022-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Sean Higgins was convicted of two counts of aggravated first degree murder and one count of conspiracy to commit murder. Higgins appeals his life sentence without the possibility of parole. He argues that the trial court failed to properly consider youthfulness as a mitigating factor during sentencing. Because Higgins was 23 years old at the time he committed his crimes, he is not a youthful offender. The trial court did not have the authority under the aggravated murder statute to impose a sentence other than life without the possibility of parole. We affirm.

I

Higgins was born in 1996. He was bullied as a child and struggled to make friends. In January 2019, Higgins joined the Navy with the goal of being in the submarine electronics computer field. But Higgins suffered a severe panic attack during

a wet chamber training exercise. Higgins later experienced trouble sleeping, anxiety, and suicidal ideation. Higgins was diagnosed with adjustment disorder with mixed anxiety and depressed mood and was disqualified from submarine duty. Less than a year after enlisting, he was found unfit for service and recommended for administrative separation. By 2020, Higgins was living with his parents in Roy, Washington, and working at a lumber yard.

Ezra Fleming Ralston lived in Vaughn, Washington at the home of his grandparents. Fleming Ralston was in a relationship with Rebecka Neubauer. Neubauer knew Spencer Kleine from high school and Kleine was friends with Higgins. Fleming Ralston had ideas of a "movement" to dismantle capitalism and live off the grid. In 2019, he began plotting to kill his grandparents so he and Neubauer could live together on his grandparents' property.

Fleming Ralston shared this plan with Kleine and, over the following months, the two discussed plans on the online social platform, Discord. Kleine told Higgins about the plan and Higgins agreed to help. Higgins, Kleine, and Fleming Ralston discussed specifics of the plan such as dates and weapons.

In the early morning of May 17, 2020, Higgins procured knives and a tarp and drove Kleine to the Fleming Ralston home. Fleming Ralston waited until his grandparents were asleep and then let Higgins and Kleine inside. The group entered the bedroom where Fleming Ralston's grandmother was sleeping. Fleming Ralston restrained his grandmother while Higgins strangled her and stabbed her twice in the neck. The group proceeded to another bedroom where Fleming Ralston restrained his grandfather while Kleine and Higgins stabbed him. They then used the tarp to move the

-2-

bodies to the basement. Afterward, Higgins and Kleine drove home. Fleming Ralston later lit the home on fire which led to discovery of the bodies and the arrest of the Fleming Ralston, Kleine, and Neubauer.

Higgins was arrested on May 29 and when confronted with cell phone location data and messages from Discord, Higgins confessed to his involvement.

A jury convicted Higgins of two counts of aggravated murder in the first degree and one count of conspiracy to commit murder in the first degree. Accordingly, Higgins faced a life sentence without the possibility of parole (LWOP). RCW 10.95.030(1).[1]

During sentencing Higgins argued for an exceptional sentence below the standard range. He argued that the mitigating factor of youthfulness applied and warranted a sentence of no more than 500 months. Higgins asserted that a lower sentence was appropriate in light of his youthfulness and that he was not involved in planning the murders and was simply there as the "operative that engaged the plan that was concocted by [Kleine and Fleming Ralston]."

The trial court considered Higgins's youthfulness without objection from the State.

> Mr. Higgins was involved in the planning and participated in more than just showing up and doing some things. He drove. He brought the weapons that were used. He brought the tarp that was utilized. So I mean I think that it is disingenuous—it would be disingenuous for me to consider Mr. Higgins to have been youthful when this thing occurred, given I think the way the court looks at why we take into account youth. Not just that someone is young, but that their behavior is such that it can't be explained in any way other than they were young and had no idea what they were getting themselves into.

---

[1] "[A]ny person convicted of the crime of aggravated first degree murder shall be sentenced to life imprisonment without possibility of release or parole." RCW 10.95.030(1).

These people understood what they were getting themselves into, and, in fact, seemed to have some—Mr. Higgins seemed to have some desire along with Mr. Kleine to make sure that it happened that night. They showed up in the middle of the night and waited for several hours outside before they moved in and commenced the attack, so I don't think that this was youthful indiscretion. This was an incredibly unfortunate set of choices made by a group of young adults who were operating in a way that not many people can understand.

The trial court determined it would not deviate down from the LWOP sentence:

I guess, Mr. Higgins, I will tell you that it appears to me as though in this state it's entirely possible that you will have the opportunity to address this matter with someone at some point in time and have this very issue whether 23 is the magic number or whether 23 is—given the facts of this case, whether 23 is a disqualifying number for you to get any kind of relief. But as I sit here now looking at the report that was prepared on your behalf that discusses your schooling, your life, your attempt at the military, you know, it appears to me as though you tried on a variety of levels not to end up like this. In fact, I suspect that ending up like this was not at all part of your thought process.

The trial court sentenced Higgins to two LWOP terms of confinement plus 240 months for the conspiracy conviction and 72 months for the deadly weapon enhancement.

The trial court set restitution in the amount of $10,988.04 to be paid joint and several with Neubauer, Kleine, and Fleming Ralston.

Higgins appeals.

II

Higgins argues that he is entitled to the individualized sentencing for youthful offenders as outlined in In re Personal Restraint of Monschke, 197 Wn.2d 305, 311 n.6, 482 P.3d 276 (2021). Higgins asserts that Monschke set a floor, not a ceiling, and allows the trial court to consider youthfulness as a mitigating factor for a 23-year-old offender. We disagree.

It is constitutionally impermissible to impose mandatory life sentences without parole on persons who committed crimes under the age of 18. Miller v. Alabama, 567 U.S. 460, 472, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). In Monschke, our Supreme Court concluded that our sentencing statute for aggravated murder in the first degree, RCW 10.95.030, was unconstitutional as applied to 19- and 20-year-old defendants. 197 Wn.2d at 306-07. Our Supreme Court explained that our state constitutional prohibition against "cruel punishment" forbids mandatory life without the possibility of parole sentences for youthful offenders because such sentences deny trial judges the discretion to consider the mitigating qualities of youth and engage in individualized sentencing. Monschke, 197 Wn.2d at 311-12. As the court clarified, "the variability in individual attributes of youthfulness are exactly why courts must have discretion to consider those attributes as they apply to each individual youthful offender." Monschke, 197 Wn.2d at 323. The court also emphasized that because "no meaningful neurological bright line exists between age 17 and age 18," sentencing courts must be able to consider the mitigating qualities of youth for defendants younger and older than 18. Monschke, 197 Wn.2d at 326.

Higgins contends that Monschke did not announce a bright line rule for youthfulness at 20, but recognized that individualized sentences that consider the mitigating qualities of youth are required for individuals "at least as old" as 19 and 20 years old. Monschke, 197 Wn.2d at 306-07. Higgins argues that "[t]his leaves the door open for an argument that an emerging adult," including Higgins who was 23 at the time he committed his crime, "is likewise entitled to constitutional protection."

But this court, and our Supreme Court have declined to extend the holding in Monschke, to 21-year-old offenders. See, e.g., In re Pers. Restraint of Davis, 200 Wn.2d 75, 83-84, 514 P.3d 653 (2022) (holding that Monschke did not extend to a 21-year-old sentenced under a different statute); State v. Meza, 22 Wn. App. 2d 514, 545, 512 P.3d 608 (2022) (holding that Monschke did not categorically extend leniency based on mitigating factors of youth to 21-year-old defendants).[2]  And in In re Personal Restraint of Kennedy, 200 Wn.2d 1, 23, 513 P.3d 769 (2022), our Supreme Court explained that the lead opinion in Monschke "was careful to note it was not concluding that [life without parole] is categorically barred for young adults."  As an intermediate appellate court, we decline here to extend the temporal bounds of Monschke to include 23-year-olds.

Higgins was charged with aggravated first degree murder under RCW 10.95.030(1).  RCW 10.95.030(1) mandates that "any person convicted of aggravated first degree murder shall be sentenced to life imprisonment without possibility of release or parole."  The statute does not allow a sentencing court to exercise discretion and impose a lesser sentence.  Higgins was 23 years old at the time he committed his crimes and that age does not fall within the 18 to 20-year-old range discussed in Monschke.  Because Higgins was not a juvenile or youthful offender, the trial court did not have discretion to consider youthfulness as a mitigating factor during sentencing.

Under the aggravated first degree murder statute, the trial court was required to impose the mandatory LWOP sentence and it did so here.

_____

[2] Higgins contends that our decision in Meza left it to the discretion of the sentencing court to apply youthful principles on a "case by case basis."  22 Wn. App. 2d at 545.  But Higgins ignores that Meza addressed a 21-year-old defendant and did not consider extending Monschke to 23-year-olds.

III

Higgins argues remand is necessary to determine whether restitution interest should be waived under a recent change in the law which allows courts to choose not to impose restitution interest.[3] We disagree.

Higgins did not object to the imposition of restitution interest even though the change in the law went into effect well before he was sentenced.[4] Higgins also did not ask the sentencing court to exercise its discretion and fails to argue that the trial court abused its discretion by imposing restitution interest. We will not disturb a restitution award "'absent an abuse of discretion.'" State v. Keigan C., 120 Wn. App. 604, 609, 86 P.3d 798 (2004) (quoting State v. Donahoe, 105 Wn. App. 97, 100, 18 P.3d 618 (2001)), aff'd sub nom. State v. Hiett, 154 Wn.2d 560, 115 P.3d 274 (2005).

We affirm.

_____
Mann, J.

WE CONCUR:

_____
Birk, J.

_____
Chung, J.

---

[3] Former RCW 10.82.090 required interest to be imposed on restitution. In 2022, the legislature added a subsection to RCW 10.82.090 granting courts the discretion not to impose interest on restitution after considers several factors including indigency. LAWS OF 2022, ch. 260, § 12.

[4] The provision went into effect on January 1, 2023. LAWS OF 2022, ch. 260, § 26. Higgins was sentenced in August 2023.